# Florian and Jeanne d'Arc Turcotte v. Estate of Albert LaRose and Leonard Nichols

[569 A.2d 1086]

No. 87-507

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed December 1, 1989

Richard A. Gadbois, Enosburg Falls, for Plaintiffs-Appellees.

Michael S. Gawne, St. Albans, for Defendant-Appellant Estate of LaRose.

Thomas J. Kennedy, St. Albans, for Defendant-Appellant Nichols.

**Morse, J.** In 1971, Leonard Nichols, at the behest of Albert LaRose, burned down a barn rented by plaintiffs, destroying their hay, equipment and livestock. Plaintiffs learned of the cause of the fire only in 1982, and subsequently brought this tort action against defendants. The trial court found defendants liable and awarded compensatory damages in the amount of $15,817 and punitive damages in the amount of $6,000. The court further assessed prejudgment interest from the date of the tort in the amount of $30,368.64 on the compensatory damages award and $11,520 on the punitive damages award. The judgment is reversed as to the award of prejudgment interest on punitive damages and affirmed in all other respects.

Estate of LaRose argues on appeal that the action was barred by the statute of limitations and that evidence of the agreement between Nichols and LaRose to torch the barn should have been excluded under 12 V.S.A. §§ 1602 and 1603, known as the "Dead Man's Statute."[1] Defendant Nichols appeals on the ground that the trial court erred in allowing prejudgment interest on both the compensatory and punitive damage awards. Nichols also complains that the trial court erred in dismissing his cross claim against the Estate of LaRose for contribution. We consider these claims in turn.

The first issue turns on whether the limitations period should be tolled from the date of the fire on September 29, 1971, until plaintiffs discovered its cause. 12 V.S.A. § 555 provides:

---

[1] A third claim, that certain illegally obtained evidence was barred by the exclusionary rule, was conceded at oral argument.

> When a person entitled to bring a personal action is pre-
> vented from so doing by the fraudulent concealment of the
> cause of such action by the person against whom it lies, the
> period prior to the discovery of such cause of action shall be
> excluded in determining the time limited for the
> commencement thereof.

Plaintiffs' burden under § 555 is to "establish both a conceal-
ment and a fraudulent intent or design to prevent discovery of
facts giving rise to [the] cause of action." *Alexander v. Gerald
E. Morrissey, Inc.*, 137 Vt. 20, 24, 399 A.2d 503, 506 (1979).
Here, the evidence unquestionably establishes both elements.
Obviously, defendants did not want to be found out; accordingly,
they concealed their actions intending to prevent anyone from
discovering their complicity. The barn was ignited with a single
match, under cover of darkness. Albert LaRose, who held a
mortgage on the barn, collected under an insurance policy for
the loss. There is no evidence that plaintiffs knew the cause of
the fire. The lawsuit was timely.

■ The second issue on appeal concerns the application of
the "Dead Man's Statute." LaRose's Estate argues that conver-
sations between LaRose and Nichols implicating LaRose in the
scheme to burn the barn were inadmissible under 12 V.S.A.
§§ 1602 and 1603, which bar certain testimony when a party to a
contract or cause of action is deceased. These provisions, how-
ever, are expressly inapplicable to any actions "founded on
tort," §§ 1602(5), 1603, and therefore cannot be invoked to ex-
clude the disputed testimony in the present lawsuit.

The third issue concerns the court's order on prejudgment
interest. Early cases of this Court held that a sum in lieu of
interest may, in the discretion of the factfinder, be awarded as
part of the damages in a tort action. *Ide v. Boston & Maine
Railroad*, 83 Vt. 66, 87, 74 A. 401, 409 (1909), for example,
stated:

> [T]he rule in this State [is] that in an action of tort interest
> as such is not allowed, but that a jury in getting at the real
> measure of damages to the plaintiff may consider the lapse
> of time from the date when the right of action accrued down
> to the time when they arrive at their verdict and may make

an allowance, on account of delay, of a sum which shall not exceed the legal rate of interest.

See also *Taylor v. Coolidge*, 64 Vt. 506, 511, 24 A. 656, 656 (1892) (plaintiff not entitled to interest as matter of law); *Clement v. Spear*, 56 Vt. 401, 402-03 (1883) (jury may consider lapse of time from commission of the wrong in awarding damages). This rule was again invoked in 1965 in *Pettengill v. Kelton*, 124 Vt. 472, 475, 207 A.2d 245, 248, where this Court held: "Since the damage was tortiously inflicted a sum in lieu of interest could have been awarded but it was not recoverable as a matter of right." We revisited the doctrine in 1983 in *Quinlan v. Hamel*, 143 Vt. 147, 148-49, 465 A.2d 232, 233-34, where we upheld the factfinder's (in that case, the court's) judgment awarding damages with interest at the legal rate from the date of the accident to the date of judgment. We wrote:

> It is appropriate to caution the trial courts, in cases where they act as triers of facts, that it would be the better course to use the express language "additional damages in lieu of interest, but not to exceed the legal rate of interest." Nevertheless, these "magic words" are not necessarily essential.

*Id.* at 149, 465 A.2d at 234.

We now abandon the "magic words" altogether, recognizing that the phrase "additional damages in lieu of interest" tells a fiction; it is at best an awkward and roundabout manner of awarding what is really interest. We also reject the theory that interest is a matter of the factfinder's discretion, where the damages are liquidated or reasonably ascertainable as of the date of the tort. Discretion in this area can lead only to inequitable results: Plaintiffs who are awarded interest will be made whole; those not awarded interest will not, contrary to the purpose of compensatory damages. Plaintiffs here, for example, will not be fully compensated unless they recover, not only the monetary value of the property destroyed in 1971, but also the interest on that amount accrued during the interim, as if they had been paid for their property at the time of its destruction. Once the value of the lost property is determined, there are no

further facts to be found. The question of interest is not properly within the province or discretion of the factfinder.

■ In adopting this rule, we are in accordance with a majority of jurisdictions that award prejudgment interest, where it is permitted, as a matter of right. See 5 M. Minzer, J. Nates, C. Kimball & D. Axelrod, Damages in Tort Actions §§ 39.02, 39.03 (1988) (citing cases); see also Restatement (Second) of Torts § 913 (1979).[2] To the extent our prior cases are inconsistent with this opinion, they are overruled.

■ The trial court's award of prejudgment interest on the compensatory damages award is therefore affirmed. Punitive damages, however, serve a different function than compensatory damages. Their purpose is to punish the tortfeasor, not to compensate the victim for losses. Interest is awarded to make the tort victim whole, and has no bearing on the question of punishing the tortfeasor. Accordingly, prejudgment interest should not be added to a punitive damages award. See *Bailey v. Container Corp. of America*, 660 F. Supp. 1048, 1056 (S.D. Ohio 1986).

Finally, defendant Nichols urges us to reconsider our rulings on contribution among joint tortfeasors. See *Howard v. Spafford*, 132 Vt. 434, 321 A.2d 74 (1974) (no contribution). We decline to do so.

*Reversed as to the award of prejudgment interest on punitive damages in the amount of $11,520. The remainder of the judgment is affirmed.*

---

[2] The rule announced here does not encompass certain damage elements of personal injury actions (for example, pain and suffering and permanent impairment), where damages are inchoate and rarely ascertainable at the time of injury.