**Estate of Edward Fleming v. David Nicholson, et al.**

[724 A.2d 1026]

No. 97-360

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 11, 1998

*Grant C. Rees* of *Lobe & Rees*, Burlington, for Plaintiff-Appellee.

*Douglas C. Pierson, William H. Quinn, Thomas H. Higgins* and *James Preston* of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Defendants-Appellants.

*Robert M. Paolini*, Montpelier, for Amicus Curiae Vermont Bar Association.

**Johnson, J.** Defendants, David Nicholson and the law firm of Nicholson & Taylor, P.C., appeal an order of the superior court granting partial summary judgment to plaintiff, estate of Edward Fleming, and an order awarding plaintiff prejudgment interest on damages. In granting summary judgment to plaintiff, the court found defendants negligent as a matter of law for failing to disclose a lack of a subdivision permit discovered while performing a title search on property plaintiff contemplated purchasing. After an evidentiary hearing was held regarding the computation of damages, the court calculated and awarded damages to plaintiff in the amount of $55,766.00 and prejudgment interest in the amount of $59,695.60. Defendants now argue that the trial court erred in granting summary judgment to plaintiff because there was no expert testimony presented concerning the standard of care for attorneys in Vermont and because defendant Nicholson was reasonable in not disclosing the defect in title. In addition, defendants argue that the court should not have granted prejudgment interest because the plaintiff's damages were not readily ascertainable. We affirm the grant of summary judgment and the award of prejudgment interest.

In 1988, Edward Fleming retained the law firm of Nicholson & Taylor, P.C., to conduct a title search on a parcel of land he was considering purchasing. While performing the search, defendant Nicholson discovered that the parcel was carved out of a larger piece of land in 1976 with the aid of a deferral of subdivision permit issued by the Department of Environmental Conservation (DEC). Defendant also discovered that in the late 1970's a dwelling and wastewater system were constructed on the property without a subdivision permit and in violation of the deferral of permit. At the time of the title search, the DEC followed a 1984 nonenforcement policy with regard to subdivision violations. Relying on this nonenforcement policy, defendant decided not to inform Fleming of the subdivision violation. Fleming, believing there were no title defects, purchased the property for $66,500.00. Unbeknownst to Fleming, the DEC rescinded the nonenforcement policy in 1989. In 1991, Fleming refinanced his mortgage on the property and died a year later. In 1994, Fleming's estate contracted to sell the property for $94,000.00, but the discovery of the subdivision violation terminated the contract. Fleming's mortgagee subsequently foreclosed on the property and sold the property at a decreased value of $10,734.00 in 1995.

The administrator of Fleming's estate, Grant C. Rees, then brought a legal malpractice action against Nicholson & Taylor, P.C., and

against David Nicholson, Esq. and Todd Taylor, Esq. individually. Plaintiff moved for summary judgment on the issue of defendants' liability, and defendant Taylor filed a cross-motion for summary judgment. The court granted Taylor's motion, and plaintiff has not appealed the decision in favor of Taylor. The court granted summary judgment on the issue of liability against defendants Nicholson and Nicholson and Taylor, P.C., holding defendant Nicholson negligent as a matter of law for failing to inform his client of the permit deferral and lack of a subdivision permit for the dwelling and wastewater system.[1] An evidentiary hearing was held regarding the computation of damages (plaintiff waived trial by jury), and the court awarded plaintiff damages in the amount of $55,766.00 plus $59,695.60 in prejudgment interest.

I.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996).

In a legal malpractice action, a plaintiff must prove that the attorney was in fact negligent and that this negligence was the proximate cause of the plaintiff's injury. See *Brown v. Kelly*, 140 Vt. 336, 338, 437 A.2d 1103, 1104 (1981). Generally, negligence by professionals is demonstrated using expert testimony to: (1) describe the proper standard of skill and care for that profession, (2) show that the defendant's conduct departed from that standard of care, and (3) show that this conduct was the proximate cause of plaintiff's harm. See *Senesac v. Associates in Obstetrics & Gynecology*, 141 Vt. 310, 313, 449 A.2d 900, 902 (1982). If the alleged negligent conduct is a matter of judgment unique to that profession, the above elements must be established by expert testimony to assist the trier of fact in determining negligence. See *Tetreault v. Greenwood*, 165 Vt. 577, 578, 682 A.2d 949, 950 (1996) (mem.) (expert testimony required to show that defendant failed to adhere to standard of care commonly exercised by Vermont attorneys when conducting title search).

There are situations, however, where expert testimony is not needed. Where a professional's lack of care is so apparent that only

---

[1] While summary judgment was granted against both Nicholson and Nicholson & Taylor, P.C., we discuss only defendant Nicholson's conduct as it was the basis for liability.

common knowledge and experience are needed to comprehend it, expert testimony is not required to assist the trier of fact in finding the elements of negligence. See *Largess v. Tatem*, 130 Vt. 271, 279, 291 A.2d 398, 403 (1972) (expert testimony required to assist trier of fact in answering scientific and technical questions, but not questions that can be answered with reference to common knowledge); *South Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 46, 410 A.2d 1359, 1365 (1980) (expert testimony not required where facts are such that layperson would know that breach of duty of care was proximate cause of injury).

Here, defendant's lack of care under the circumstances was so apparent that no expert testimony was required. In general, the standard of care to which an attorney is held in rendering professional services is the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent attorney practicing in the jurisdiction of Vermont. See *Russo v. Griffin*, 147 Vt. 20, 24, 510 A.2d 436, 438 (1986). Defendant argues that expert testimony was needed to assist the trier of fact in determining whether his conduct conformed to that standard, that is, whether a reasonable, careful, and prudent Vermont attorney would have disclosed the existence of the subdivision violation, taking into account the existence of the nonenforcement policy. We disagree.

 Defendant relies on *Tetreault* to argue that a trier of fact requires the guidance of expert testimony in assessing an attorney's conduct with respect to a title search. See *Tetreault*, 165 Vt. at 578, 682 A.2d at 950-51. Defendant's reliance on *Tetreault* is misplaced, however, because the negligent conduct at issue in *Tetreault* is distinguishable from the conduct at issue in this case. In *Tetreault*, the plaintiffs brought a malpractice claim against their attorney, claiming that the attorney was negligent in failing to discover and advise them of subdivision permit violations on the property they were purchasing. See *id.* We held that expert testimony was required to prove both the standard of care and whether there had been a breach of the standard. The central question concerned the process and common activities performed during a title search, a task which is unique to the profession and therefore created the need for expert testimony. In the present case, defendant's aptitude in performing the title search is not at issue; rather, the finding of negligence is premised upon his failure to disclose important information to his client, namely, the permit violations that could diminish the value of the subject property.

That defendant's nondisclosure of this information proximately caused plaintiff's loss is also apparent. Defendant ultimately prevented his client from making an informed decision about whether to purchase the property. Defendant is the source from which Fleming would have expected to receive such information, and absent that information, Fleming would have necessarily misapprehended the value of the property. The issues of whether defendant had a duty to disclose the permit violation, whether he breached that duty, and whether the breach proximately caused plaintiff's injury are not technical issues that require the assistance of an expert in order for a trier of fact to be able to comprehend them. The question, then, in reviewing the grant of summary judgment, is whether defendant has raised any genuine issues of material fact concerning the elements of negligence.

Defendant argues that the majority of attorneys in Vermont, with knowledge of the nonenforcement policy, would not have disclosed the permit violations, and that his conduct was therefore reasonable. We reject the notion that the practice of the majority of attorneys conclusively establishes the standard of care. While the standard of care is based on the "degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent" Vermont lawyer, *Russo*, 147 Vt. at 24, 510 A.2d at 438, the conduct of the majority of Vermont lawyers does not define "reasonableness" per se. It is ultimately the role of the courts to define this standard. "Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission." *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932); see also, e.g., *Helling v. Carey*, 519 P.2d 981, 983 (Wash. 1974) (where standard practice of ophthalmology profession did not require routine pressure tests for glaucoma for patients under 40 years of age, court may set standard of care and hold doctors negligent as matter of law).

We find that a reasonable, careful, and prudent attorney would disclose the existence of the permit violations and nonenforcement policy to a client. In conducting a title search for a client, an attorney has a duty to inform and explain to the client the implications of any clouds on the title that would influence a reasonably prudent purchaser not to purchase the property. See *North Bay Council, Inc. v. Bruckner*, 563 A.2d 428, 431 (N.H. 1989). After disclosing this information, it is possible that a reasonable attorney might advise his client to purchase the property even with the

encumbrances, but that is not the issue at bar. After conducting the title search for Fleming, defendant had a duty to inform and explain to Fleming the implications of the deferral of permit, violations thereof, and the lack of a subdivision permit.

Summary judgment was therefore appropriate in this case because there are no issues of material fact in dispute. We agree with the trial court that defendant was negligent as a matter of law and affirm the grant of summary judgment.

## II.

We now turn to the question of whether it was error for the trial court to award prejudgment interest on the damages assessed in this case. The trial court conducted an evidentiary hearing on the issue of damages, and its findings of fact will not be set aside unless clearly erroneous. See V.R.C.P. 52(a)(2). Defendant argues that the trial court erred in awarding prejudgment interest because, defendant alleges, the damages in this case were not readily ascertainable. We disagree. Even if the damages in this case were not readily ascertainable, a question which we do not decide today, the trial court maintains the ability to award prejudgment interest in a discretionary capacity to avoid injustice. Therefore we will allow the award to stand absent an abuse of discretion.

In this case, the trial court calculated damages by taking the difference between the value of the unencumbered property and the value of the encumbered property. These figures were based on the price for which plaintiff purchased the property in 1988, when the defect in title was concealed, and the price for which plaintiff was able to sell the property at the foreclosure sale in 1995, after the defect had become apparent. Both of these figures represent the fair market value of the property as established in transactions between willing sellers and willing buyers. The trial court then awarded prejudgment interest based on this calculation of damages.

Defendant relies on our holding in *d'Arc Turcotte v. Estate of LaRose*, 153 Vt. 196, 569 A.2d 1086 (1989), to argue that a trial court may not award prejudgment interest in a discretionary capacity. In that case we held that, whereas the decision to award prejudgment interest had historically been a matter of discretion for the trier of fact, see, e.g., *E.T. & H.K. Ide v. Boston & Maine R.R.*, 83 Vt. 66, 87, 74 A. 401, 409 (1909) (it is permissible for court to instruct jury that it is within its discretion to award prejudgment interest); *Wells v. Village of Orleans*, 132 Vt. 216, 224, 315 A.2d 463, 468 (1974) (trier of

fact may award prejudgment interest if it finds that plaintiff was harmed by delay in reimbursement of monetary loss); *Hall v. Miller*, 143 Vt. 135, 146, 465 A.2d 222, 228 (1983) (award of prejudgment interest on unliquidated damages is proper where trial court made reasonable finding as to extent of damages); *Quinlan v. Hamel*, 143 Vt. 147, 148, 465 A.2d 232, 233 (1983) (recovery of prejudgment interest is discretionary rather than matter of right where damages are not liquidated), it was no longer discretionary "where the damages are liquidated or reasonably ascertainable as of the date of the tort." *Turcotte*, 158 Vt. at 199, 569 A.2d at 1088. Defendant argues that, because the damages in this case were not liquidated or readily ascertainable[2] at the time of the tort, the award of prejudgment interest was in error.

Defendant's argument misconstrues the significance of our holding in *Turcotte*. Rather than restricting the availability of prejudgment interest, *Turcotte* reinforced the availability of prejudgment interest by mandating its award in certain cases—those cases where damages are liquidated or reasonably ascertainable. Our holding in *Turcotte* is thus in accordance with V.R.C.P. 54(a) which provides that, "[i]n an action where monetary relief is awarded, the amount of the judgment *shall include* the principal amount found to be due [and] all interest accrued on that amount up to and including the date of entry of judgment." This does not mean, however, that prejudgment interest is unavailable in other types of cases. Contrary to defendant's assertion, our holding in *Turcotte* did not eliminate the traditional discretionary capacity of the trier of fact to award prejudgment interest where it is required to make the plaintiff whole.

As recently as our decision in *Winey v. William E. Dailey, Inc.* we recognized that the award of prejudgment interest was mandatory where damages were readily ascertainable and discretionary in other cases. See 161 Vt. 129, 141, 636 A.2d 744, 752 (1993) (where damages are not readily ascertainable, it is within the court's discretion to deny prejudgment interest). Whereas in *Winey* the trial court determined that the balance of equities did not mandate an award of prejudgment interest on certain items, in the instant case, the court concluded that they did. This was within the proper scope of the court's discretion.

---

[2] While some of our cases have used the term "readily ascertainable" instead of "reasonably ascertainable," the purpose of prejudgment interest as recognized in *Turcotte* and other cases—to fully and accurately compensate the plaintiff where the plaintiff has been deprived of a definite sum of money for a definite period of time—makes clear that a reasonable calculation of monetary damages should suffice as the basis for an award of prejudgment interest.

The text of § 913 of the Restatement (Second) of Torts, which we adopted in *Turcotte*, see *id.* at 200, 569 A.2d at 1088, also supports this interpretation:

> (1) Except when the plaintiff can and does elect the restitutional measure of recovery, he is entitled to interest upon the amount found due
>
> (a) for the taking or detention of land, chattels or other subjects of property, or the destruction of any legally protected interest in them, when the valuation can be ascertained from established market prices, from the time adopted for their valuation to the time of judgment, or
>
> (b) except as stated in Subsection (2), for other harms to pecuniary interests from the time of the accrual of the cause of action to the time of judgment, if the payment of interest is required to avoid an injustice.
>
> (2) Interest is not allowed upon an amount found due for bodily harm, for emotional distress or for injury to reputation, but the time that has elapsed between the harm and the trial can be considered in determining the amount of damages.

Restatement (Second) of Torts § 913 (1979). Section 913 sets out three rules addressing three different scenarios. First, where damages can be calculated from established market prices (i.e., where they are liquidated or readily ascertainable[3]), the award of prejudgment interest is mandatory. Second, for other harms to pecuniary interests, prejudgment interest should be awarded where required to avoid an injustice. Third, for inchoate damages, which cannot be fixed to any definite point in time, any delay in judgment should be considered and incorporated as part of the overall damages award. This three-part scheme is reflected in *Turcotte* and its progeny and was explicitly adopted in Vermont when we adopted § 913. The trial court in this case concluded within its discretion that prejudgment

---

[3] The mere fact that plaintiff and defendant presented conflicting theories of damages does not, as defendant argues, automatically lead to the conclusion that the damages were not reasonably ascertainable. Plaintiffs and defendants in a tort action will always have an incentive to characterize the correct measure of damages in a way that is advantageous to them. Despite this fact, where the court has the option to rely on an established method of calculation, the damages may be said to be reasonably ascertainable. If we accepted defendant's argument, defendants would always be able to unilaterally defeat an award of prejudgment interest simply by presenting a conflicting theory of damages.

interest, which should generally be made available to plaintiffs where there has been a delay in judgment, see V.R.C.P. 54(a), was necessary to avoid an injustice.

Defendant asserts that it is unfair to award prejudgment interest because defendant could not have been aware of the extent of damages in 1988, given that damages were ultimately calculated based on a figure obtained from a 1995 transaction. Defendant is correct that his knowledge of the amount owed is a relevant factor in the equitable inquiry. "Ordinarily, if the sum due is sufficiently definite, so that the tortfeasor has reason to know the amount he should pay or its approximate amount, it would be unjust not to allow interest from the time when he should have made payment." Restatement (Second) of Torts § 913(1) cmt. a. Such knowledge on the part of the defendant, however, is not a requirement for a discretionary award of prejudgment interest. The fact that damages were ultimately calculated on the basis of a 1995 figure does not work an unfairness against defendant. The property always possessed an implicit price; it simply could not be established through a market transaction until it went up for sale in 1995. The measure of damages was conservative, awarding plaintiff the difference between the purchase price in 1988 and the sale price in 1995. If there had been no defect in the title, it is much more likely that the property would have gained rather than lost value in the intervening years (as suggested by the $94,000.00 offer plaintiff received for the property in 1994, before the title defect was known). Although the 1995 value provided the measure for the specific amount of damages, the deprivation in value to plaintiff actually occurred in 1988. Contrary to defendant's assertion, it would be unfair to allow defendant to benefit from the fact that the diminution in value of the property was concealed for so many years.

█ Because the court as trier of fact in this case possessed the ability to award prejudgment interest in a discretionary capacity, we will not reverse its decision absent an abuse of discretion. Here, the court had sufficient evidence before it to conclude that there was a determinate sum of money due to plaintiff at a specific time, and that plaintiff had suffered from the delay in payment of that sum. Because the trial court used a reasonable and established method to calculate damages and prejudgment interest in this case, we find no abuse of discretion and affirm the award of prejudgment interest.

*Affirmed.*