Town of Lunenberg v. Supervisor and Board of Governors of the Unorganized Towns and Gores of Essex County, No. 63-10-00 Excv (Morris, Jr., J., Feb. 7, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
ESSEX COUNTY, SS.

|  |  |  |
|---|---|---|
| Towns of Lunenberg, Canaan, Brighton, Bloomfield, Victory and Concord, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | Essex Superior Court |
| | ) | Docket No. 63-10-00 Excv |
| Supervisor and Board of Governors of the Unorganized Towns and Gores of Essex County, Defendants. | ) ) ) ) ) | |

DECISION AND ORDER

This matter is before the Court to resolve remaining issues in a declaration of rights action regarding sums of money held by Defendants. Specifically, sums of money held on account by Defendants as of May 18, 2000, when the legal and supervisory authority of the Defendants over the unorganized towns and gores ("UTG") of Essex County was essentially abolished by the Legislature and the latter towns and gores effectively became their own quasi-municipal entity. In a detailed Memorandum Decision and Order [hereinafter "Decision"] dated November 20, 2002, the Court (Pearson, J.) addressed most of the issues presented, but consistent with that Decision and as agreed by the parties, two remain: First, whether there is justification for the Defendant supervisors to claim an additional $40,000.00 for fiscal year 1999 because it had been the practice of the Supervisor to "seed" her checking account with $40,000.00 with money from one fiscal year to provide some money for expenses for the next fiscal year; and Second, whether the Plaintiff Towns are entitled to interest at the statutory rate

1

of 12 per cent per annum on the amount of money in the UTG savings account at the time of the filing of the complaint as well as the interest accruing in the savings account *since* the date of the filing of the complaint.   After a series of status conferences, convened to permit the parties an opportunity to negotiate resolution of the remaining issues, the parties ultimately submitted a stipulation of facts and memoranda of law on these issues, for determination by the Court.

1999 Surplus Revenue

The parties stipulate that the Supervisor's practice was to begin the year with $40,000 in the checking account from leftover funds from the prior fiscal year, in order to provide money for expenses until she began to receive property tax payments.  They also stipulate that as of July 1, 2000, the checking account initial actual surplus for 1999 was $67,514.  From that amount, the Supervisor paid two bills attributable to 1999 expenses: $17,150 to the Town of Brighton for a school bill, and $26,000 to the Essex County Sheriff.  This left a 1999 surplus of $24,362 in the checking account.[1]

The Plaintiffs seek only that latter amount of $24,362 because they acknowledge the Supervisor's right to pay bills even after July 1, 2000, provided those bills were properly attributable to fiscal year 1999.  The Defendants argue they are entitled to keep the sum remaining in the checking account because the former 32 V.S.A. § 4938 granted the Supervisor such discretion.  That statute reads as follows: "During the month of July each year, upon *adequate provision* being made for the expenses of all unorganized towns and gores in Essex County, any surplus revenue . . . shall be distributed by the supervisor . . . to each organized town and city within that county . . . ."  See former 32 V.S.A. § 4983 (emphasis added).  The Defendants argue that the term "adequate provision" granted the Supervisor discretion to withhold funds and create a reserve for any late expenses; in effect, the discretion to declare – despite the $24,362 remaining from 1999 – that no more "surplus revenue" existed from that year.

In the Court's assessment, the Defendants' contention is without merit.  After a thorough review of the statutes and the essential claims and arguments, Judge Pearson concluded that the Legislature intended to set up a "pay as you go" system, "with any surplus left over after the prior year's books were closed to be paid to the incorporated towns of Essex County" during the month of July each year.  Decision at 3, ¶ 6.  The

---

[1] As to the separate savings account in issue, the parties stipulate that the savings account contained $174,021.24 on October 26, 2000, the date on which this action was commenced; and that the savings account should have earned an additional $1,024.80 interest if the Supervisor had not withdrawn and subsequently replaced $42,745.26 to pay the UTG 1999 education property taxes.

statutes did not create any provision or authority for a forward-looking reserve or "emergency" fund. Id. (emphasis added). About the provision the Defendants cite as authority for the discretionary holdover, Judge Pearson said:

> [T]his provision is clearly <u>backward-looking</u> and related solely to the expenses for the year already completed; it hardly authorizes the creation of a continuous "emergency fund" whose primary purpose was to provide a financial cushion for the ensuing year (or even future years) which had already commenced that January 1st. Moreover, it hardly seems this provision would provide the necessary authority to segregate $40,000 at the start of every new year, and then include that amount as justification for not paying the entire surplus otherwise calculated for the preceding year, as the supervisor appears to have done in July 2000 for the 1999 (and last) calendar year under the old system.

Id. at 9. (emphasis in original). Accordingly, "[i]f there was in fact a surplus under the former § 4983 for calendar year 1999, Defendants were still obligated to pay it to Plaintiffs by the end of July 2000." Id. at 10.

Here, the Defendants paid two bills after July 1, 2000, stipulated as authorized by the Plaintiffs. The Defendants' suggested interpretation – that the Supervisor could arbitrarily declare an amount of the 1999 surplus revenue as simply not that – is in our assessment not a plausible construction of the statute. The statute's plain meaning grants no such discretion. The term "adequate provision" is plainly linked to "expenses," and the Defendants do not dispute that the *actual expenses* from 1999 have long been known and paid for. As the remaining $24,362 was not required to cover any further 1999 expenses, the 1999 books must be "netted out" and the remaining surplus be paid to the Plaintiffs in the amount of their *pro rata* shares.

Interest

In his decision, Judge Pearson awarded the savings account as of October 25, 2000, to the Plaintiffs – at the time of his decision, an unknown amount. The parties now stipulate, and the Court finds as fact, that on October 25, 2000, the savings account contained $174,021.24. The parties also stipulate that as to the separate checking account maintained by the Supervisor, as of payment of 1999 expenses, this account had an approximate balance of $24,364.00.

The Plaintiffs maintain that they are further entitled to the bank interest earned on the savings account to the date of the judgment order, as well as prejudgment interest at

3

the statutory rate of 12% per annum on the checking account, the savings account, and the bank interest earned on the savings account. Plaintiffs assert that such prejudgment interest is payable to them as a matter of right from the date of commencement of this action, October 26, 2000, The Defendants object to such assessment on grounds that the right to prejudgment interest does not arise here because the sums sought by the Plaintiffs were not readily ascertainable.

There is no question that, as the sums in issue have been determined by the Court to be properly awarded to the Plaintiff Towns in their principal sum, the Plaintiff Towns are also clearly entitled to the payment out of any interest that may have accrued in these accounts over time through application of the prevailing rates paid by the bank on such depositary accounts. In other words, the present balances in those accounts with any interest accrued to date of ultimate payment . Such shall be the case with respect to all "bank" or "earned" interest so accrued here.

Different considerations apply with respect to the Plaintiff Towns' request for assessment of prejudgment interest at the statutory rate of 12%.

Prejudgment interest may be awarded as damages for detention of money "due to breach or default." Reporter's Notes to 1981 Amendment, V.R.C.P. 54. Both parties look to the general rule that where the damages are liquidated or readily ascertainable, the award of prejudgment interest is a matter of right. *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 304 (1993). However, under the particular circumstances, sorting through the issues of entitlement to prejudgment interest and juncture from which such is to be calculated is not a simple task.

This case involves somewhat novel issues not customarily presented in a civil action for damages, as reflected in the parties' competing and creative arguments on the subject of assessment of prejudgment interest, and the difficulties that they have experienced in heroic and difficult mutual effort over time to reach agreement as to the sums in issue in the referenced accounts.

Defendants assert that prejudgment interest is not to be assessed as a matter of right, in that the damages here were not liquidated or readily ascertainable, at the least until the stipulation of the parties as to the sums in issue. Plaintiffs urge the Court to conclude that statutory prejudgment interest is to be assessed as a matter of right, with reference to dicta appearing in *Quinlan v. Hamel*, 143 Vt. 147, 149 (1983) and *d'Arc Turcotte v. Estate of LaRose*, 153 Vt. 196, 199-200 (1989), which overrules *Quinlan* as to the characterization and award of prejudgment interest.

4

The "playing field" so to speak, as to the issue of prejudgment interest, is staked out in the more familiar and commonly experienced territory of tort and contract actions. *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 141 (1993) (citing *Newport Sand & Gravel Co. v. Miller Concrete Constr., Inc.*, 159 Vt. 66, 71 (1992) (contract) *and d'Arc Turcotte, supra.* (tort)). Of course, this action for declaratory relief sounds squarely in neither type of cause.

In cases other than "traditional" tort and contract matters, the Court has proceeded more cautiously in addressing the subject of prejudgment interest as either a matter of right or discretion of the Court. For example, in *Remes v. Nordic Group, Inc.,* 169 Vt. 37 (1999), the Court was called to determine the availability of prejudgment interest upon a jury award of damages on a claim of promissory estoppel. The Court construed prejudgment interest as an element of compensatory damages, stating further that "….the nature of damages afforded must correlate to the nature of the action brought." *Id.* At 40. The complexity presented in *Remes* was that estoppel is of course an equitable remedy or cause, not sounding precisely in contract or tort. The Court ultimately concluded that prejudgment interest was awardable as a matter of the Court's discretion, declining to reach the issue of whether prejudgment interest is available as a matter of right in such cases. The Court did go on to note, though, that "…..in a promissory estoppel case the question of interest may be more properly committed to the sound discretion of the trial court than awarded as of right given the mixed legal and equitable nature of the claim." *Id.,* at 41. The decision in *Remes* provides reasonably clear indication, in our assessment, that prejudgment interest is not necessarily to be awarded in all cases, regardless of cause of action, even where damages are liquidated or readily ascertained.

None of the cases cited as authority by either party are addressed to the particular circumstances of this case. The cases primarily address the issue of assessment of prejudgment interest in more traditionally cognizable cases in tort and contract, involving private parties. In *Newport Sand & Gravel Co., supra.*, the Court did hold that municipalities were not exempt from assessment of prejudgment interest in appropriate cases, but that was essentially a contract case. However, in *Herbert v. Town of Mendon*, 159 Vt. 255, 261 (1992), the Court sustained assessment of prejudgment interest in a case in which development impact fees had been assessed by and paid to the Town under terms of an ordinance declared by the trial court in its decision to be invalid. Certainly, the actionable "wrong" in issue in *Herbert* sounded neither in tort nor contract, and yet the award of prejudgment interest as a matter of right was sustained by the Court on appeal. *Herbert, supra.* at 261.

Here, the authority of the Court is invoked to declare the rights and responsibilities of the parties as to the sums presently held in certain accounts that remained upon the

5

legislative revision of the former statutory scheme established for supervision of financing for the public needs of the unorganized towns and gores of Essex County. The Plaintiffs pray for an order that their pro rata share of said funds be paid over to the towns, with interest at the statutory rate of 12% per annum. This dispute over distribution of public funds provided for the needs of the unorganized towns and gores does not have an easy "fit" with traditional causes sounding in either tort or contract. The record of the case quite clearly establishes the difficulties experienced by the parties, in their diligent efforts to sort out the status of the accounts and records in issue in an effort to ascertain the exact sums in issue, or reasonable approximation of the same. Even so, it would appear that the referenced precedent establishes that Plaintiffs have a right to the assessment of prejudgment interest as to the sums in issue in this case, at least from the time that the sums were "liquidated or ascertained" forward.

Applying the principle of assessment of prejudgment interest where sums in issue are "liquidated or capable of ready ascertainment", it would fairly and reasonably appear that such did not occur until the date of the parties' stipulation as to the sums in issue in this case, on January 28, 2004. Even though by stipulating as to amounts, Defendants did not concede liability for payment of the sums, or portions thereof, in issue, the sums in issue were liquidated, "readily ascertained", and thus in the Court's assessment, from that date, consistent with precedent, prejudgment interest at the statutory rate is payable to Plaintiffs as a matter of right.[2]

Given our conclusion as to the point of liquidation or "ready ascertainment", we decline to award prejudgment interest as a matter of right to Plaintiffs for any period prior to that stated. Even though the Court retains capacity to award prejudgment interest as a matter of discretion, to "avoid injustice," See, *Agency of Natural Resources v. Glens Falls Ins. Co.*, 169 Vt. 426, 435 (1999), and even though municipalities are certainly not exempt from assessment of prejudgment interest in appropriate cases, *Herbert, supra.* and *Newport Sand & Gravel, supra.* at 73, discretionary interest award beyond that specified as a matter of right is not fairly or reasonably warranted under the particular circumstances of this case. The parties have been engaged in a dispute over the value and entitlement to the accounts against the backdrop of statutory interpretation and a long-standing, previously unchecked practice of setting aside an annual "reserve", spanning the tenure of at least two Supervisors. The sums in question are public funds, disputed by

2 *d'Arc Turcotte, supra.* relied upon by Plaintiffs, appears to establish the date at which damages are liquidated or capable of ready ascertainment as "**the date of the tort**" (presumably also, date of breach, or actionable conduct in issue). However, in *Estate of Fleming v. Nicholson,* 168 Vt. 495, 500-503 (1998), the Court appears to reject, or at least modify this juncture as the sole point of ascertainment in holding that interest might accrue from a later time of valuation of the damages in issue, as determined by the fact finder, to time of judgment. See also, *Winey, supra.* at 141.

municipalities under circumstances in which there has been no indication of bad faith, ill will, or withholding of funds under plainly meritless circumstances. Both the savings account and the checking account are interest bearing accounts, and our decision is that Plaintiffs take the benefit of the "bank interest" that has accrued in these accounts over time. This is not a case in which, in the Court's assessment, an interest award beyond that provided as a matter of right is reasonably required to avoid injustice. We decline to award statutory prejudgment interest, prior to January 28, 2004 as a matter of right or judicial discretion. Of course, thereafter, it *is* to be assessed and payable by Defendants.[3]

We recognize that under the particular circumstances of this case, if the purpose of award of prejudgment interest is to compensate a Plaintiff for the loss of use of money that would have otherwise been available, the assessment of interest at the statutory rate of 12% may be perceived as unduly punitive. However, as we construe the cases, we are obliged to assess prejudgment interest as a matter of right from January 28, 2004 forward. If assessment of such interest for this period of time were a matter committed solely to our discretion, rather than a matter of right, we would decline to assess prejudgment interest in our assessment of the particular circumstances of this case. To the extent that assessment of prejudgment interest is a matter committed to our discretion at any juncture, we decline to do so in consideration of the particular circumstances presented.

### ORDER

The Plaintiff Towns[4] shall have payment of their *pro* rata shares of the balances of the referenced savings account and checking account, with all "bank" or "earned" interest accrued on each through date of payment. The referenced sums shall be distributed to the Plaintiff Towns *pro rata*, according to the population-based formula established and observed under the previously applicable statutes.[5]

Plaintiffs' demand for prejudgment interest is GRANTED IN PART, with prejudgment interest accrued at the statutory rate from and including January 28, 2004 to date of entry of judgment herein; Plaintiff's demand for prejudgment interest is DENIED

---

3 Quite apart from the established criteria governing award of prejudgment interest in this case, in consideration of the legislative history described in Judge Pearson's decision, and the apparent intentions of the legislature with respect to treatment of revenues and expenditures of the Unorganized Towns and Gores over the years and into the future, it would appear contrary to legislative intent to burden the Gores in the particular circumstances here with substantial financial burdens that would accrue in any discretionary assessment of prejudgment interest at the statutory rate of 12% retroactive to date of filing of the Plaintiffs' complaint.

4 The "non-Plaintiff" organized Towns of Essex County are: Brunswick, East Haven, Granby, Guildhall, Lemington, Maidstone, and Norton. 24 VSA § 6. These Towns are not parties; however, under the terms of the Decision given in this case, all organized Towns in the County shall receive *pro rata* distribution of the funds in issue, with accrued "bank interest" and prejudgment interest as indicated. See Decision (Pearson, J.) at 11.

5 Former 32 V.S.A. § 4983.

IN PART, in that prejudgment interest shall not be assigned, assessed, or payable, as a matter of right or discretion of the Court, prior to that date.

To address the problem presented in Plaintiffs' memorandum (pp. 4-6) as to the accumulation of "bank interest" in the accounts in relation to application of statutory pre-judgment interest, the Court orders that prejudgment interest at the statutory rate of 12% shall accrue as to the balances in the referenced accounts from January 28, 2004 forward. These balances shall of course include all "bank" or "earned" interest accrued as of that date.

Plaintiffs' counsel shall prepare a judgment order, consistent with the decision given herein, for review and approval by the Court.

DATED at Guildhall, this _____ day of February, 2005.

_____
Walter M. Morris, Jr.,
Presiding Judge

8