STATE OF VERMONT
WASHINGTON COUNTY

| | |
|---|---|
| State of Vermont, | ) |
|     Plaintiff, | ) |
| | ) Washington Superior Court |
| | ) Docket No. 307-5-06 Wncv |
| v. | ) |
| | ) |
| Bradford Oil Company, Inc., | ) |
|     Defendant. | ) |

## Decision
### Five Defendants' Motions to Dismiss

In this case, the State (Agency of Natural Resources) seeks the abatement and cleanup (including related damages and penalties) of hazardous waste discovered on a site in Springfield currently owned by Defendant Bradford Oil Company, Inc. Bradford, the sole defendant to the State's claim, has filed third-party claims against the State (Agency of Transportation, or AOT) and eleven others for contribution. Five contribution-defendants have filed Motions to Dismiss: the Agency of Transportation; J.S. Burgess, Inc. d/b/a Lucas Industries, Inc. (Lucas Industries); American Water Works Company, Inc.; Envirosource, Inc. n/k/a Tube City IMS Corporation (Envirosource); and Wellspring Capital Management, LLC. A hearing was held on April 4, 2008 on all five Motions to Dismiss.

In the complaint, the State alleges that the hazardous waste on the site, or emanating from it, was deposited there primarily during the site's days as a coal gasification plant, about 1900 to 1950. The site has been owned and operated for different purposes by numerous entities during and since that time. Bradford, the current owner, purchased the site in 1997 and now operates it as a gas station and convenience store. The State claims that, over the last several years, Bradford performed some of the testing, monitoring, and/or cleanup activities requested of it, but at this point has stopped cooperating, necessitating this legal action.

Bradford's third-party claims are based on 10 V.S.A. § 6615(i), which statutorily authorizes a party responsible for cleanup, removal, and remedial costs under § 6615 to seek contribution from other responsible parties. To be a responsible party under § 6615, assuming a relevant "release or threatened release" of hazardous materials, one must belong to one of several classes of persons described at § 6615(a)(1)–(4). 10 V.S.A. § 6615(c). Those classes include: (1) current owners or operators of the facility; (2) persons who were owners or operators at the time of the release or threatened release; (3) persons who owned or possessed the waste and made arrangements with third parties regarding its disposal or treatment ("arrangers"); and (4) persons who have accepted hazardous materials for transport to disposal or treatment facilities. 10 V.S.A. § 6615(a); see *State v. Howe Cleaners, Inc.*, No. 27-1-04 Wncv (Toor, J., Mar. 10, 2006) at 6–9, available at http://www.vermontjudiciary.org/tcdecisionscvl/2006-3-15-2.pdf (discussing 10 V.S.A. § 6615(a)).

Generally, there are two types of issues raised in the motions to dismiss. For different reasons, the Agency of Transportation, Lucas Industries, Envirosource, and Wellspring argue that Bradford's claims against them should be dismissed because they are not responsible parties under 10 V.S.A. § 6615(a). American Water Works, Envirosource, and Wellspring also argue that the relevant limitations statute has run and now bars Bradford's claims.

The purpose of a Rule 12(b)(6) motion is to test the law of the claim, not the facts that might support it. *Kane v. Lamothe*, 2007 VT 91, ¶ 14. The Vermont Supreme Court's recent 3-2 decision in *Colby v. Umbrella, Inc.*, 2008 VT 20 (filed Mar. 7, 2008) (Burgess, Skoglund, JJ., dissenting) demonstrates how difficult and contentious the proper application of Rule 12 can be. The *Colby* majority took the more cautious approach of not dismissing a complaint consisting of questionably vague or incomplete allegations in favor of letting the evidence develop. In all applications of the civil rules, of course, the court strives to advance the "just, speedy, and inexpensive determination" of the case. V.R.C.P. 1. As reflected in *Colby*, the different goals of Rule 1 often compete, and there is room for reasonable disagreement about the right balance in different situations. These interests are salient in this case, where the dismissal motions focus largely on the paucity of meaningful facts in the third-party complaint and, in opposition to dismissal, Bradford relies heavily on the fact that Rule 8 requires only notice pleading rather than more specifically articulating its claims.

## Responsible party status—the Agency of Transportation

Bradford's claim against the Agency of Transportation is based on AOT's involvement in a road project conducted by the Town of Springfield. Bradford alleges that in about 1964—long before pollution at the site had become a contentious issue—the Town purchased a narrow strip of the site that was contiguous to a public road to widen that road. Bradford alleges that the strip of land is highly likely to have been polluted at the time and that the Town's project may have caused additional releases of hazardous waste. The actual construction work was performed for the Town by AOT. Bradford alleges that in performing this work, AOT inevitably would have disturbed the soil and possibly transported some of it offsite. Bradford does not allege that AOT had any other connection to the site or any more direct connection to the waste on the site, or that the road project otherwise added contaminants to the soil. Bradford explains the claim as follows:

> As such, Bradford contends that, by virtue of its construction activities on the facility, AOT has incurred liability as a former operator and arranger under 10 V.S.A. § 6615(a)(2). Specifically, Bradford alleges that, in undertaking construction, AOT disrupted, moved and transported soils contaminated by coal tar, a known hazardous waste. The disruption, disbursement and transporting of surface soils containing hazardous waste would, once established, constitute a release or threatened release under the Statute. Assuming the proof of these factual allegations, AOT would be strictly liable under the Statute.

Bradford's Response to AOT's Motion at 2 (filed Dec. 11, 2006). That is, Bradford claims that the mere fact of disturbing or moving polluted soil is enough to classify one as an operator or arranger under the Act.

2

AOT, relying on *United States v. Bestfoods*, 524 U.S. 51 (1998), a CERCLA case, argues that there is more to operator liability than this. In *Bestfoods*, the Court examined whether a corporate parent has operator liability due to its subsidiary's operations on a site. The Court concluded that, absent veil-piercing circumstances, as an ordinary incident of corporate law, the parent, a mere stockholder, would have no liability unless it "actively participated in, and exercised control over, the operations of the facility itself . . . [making it] directly liable in its own right as an operator of the facility." *Id.* at 55. In other words, the parent is not immune from CERCLA liability merely because its subsidiary has liability. The issue turns to whether the parent has its own direct liability regardless of its relationship to its subsidiary.

The Court thus examined the meaning of operator liability:

> This much is easy to say: the difficulty comes in defining actions sufficient to constitute direct parental "operation." Here of course we may again rue the uselessness of CERCLA's definition of a facility's "operator" as "any person . . . operating" the facility, which leaves us to do the best we can to give the term its "ordinary or natural meaning." In a mechanical sense, to "operate" ordinarily means "[t]o control the functioning of; run: operate a sewing machine." And in the organizational sense more obviously intended by CERCLA, the word ordinarily means "[t]o conduct the affairs of; manage: operate a business." So, under CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. *To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.*

*Bestfoods*, 524 U.S. at 67 (citations omitted) (original emphasis removed; new emphasis added). *Bestfoods* reveals the deficiency in Bradford's claim against AOT: AOT is not reasonably known, suspected, or alleged to have had any responsibility for "operations specifically related to pollution." Its role was to move the dirt to widen the road. The broad interpretation that Bradford (as contribution-plaintiff) advances would impose "operator" liability on a local handy man or woman with a rototiller who is hired to till a garden plot in soil later determined to contain pollutants. This is stretching "operator" liability too far.

Bradford opposes dismissal substantially on two grounds: that the court should not follow *Bestfoods* under the Vermont statute, and that, in any event, the allegations should be minimally sufficient to permit discovery to proceed. Neither argument is persuasive in the context of this claim.

The court adopts the *Bestfoods* analysis for the definition of "operator" under the Waste Management Act. The court acknowledges that while the Act "parallels CERCLA in many relevant respects," they are not the same. *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 28, 177 Vt. 421. Nevertheless, Bradford has not brought to light any distinction that makes a difference in this context, and the *Bestfoods* analysis is compelling.

3

Bradford's proposed alternative—that the mere disturbance of contaminated soil for any reason qualifies one as an operator—would result in strict liability for countless persons having nothing to do with the generation of or responsibility for hazardous waste, or control over contaminated property.

Bradford's "arranger" liability claim fares no better against AOT. Among other things, arranger liability requires that the potentially responsible party "arranged for disposal or treatment . . . of hazardous materials . . . by any other person or entity, at any facility owned or operated by another person or entity and containing such hazardous materials." 10 V.S.A. § 6615(a)(3). Nothing in the allegations against AOT suggests that it ever did any of these things. The plain language of § 6615(a)(3) is dramatically narrower than Bradford's interpretation, which apparently is that anyone who moves or instructs others to move soil that is later found to be contaminated with hazardous waste is an arranger.

Bradford cautions the court against striking too soon, urging that it has met Rule 8 requirements and should be entitled to discovery in an effort to develop relevant facts that will show that it may have a claim against AOT. As against AOT, the deficiency in Bradford's pleading is not merely technical; Bradford is not simply missing one allegation or another that, once added, would fill out an otherwise sufficient statement of the claim. Rather, the allegations, along with the briefing, imply no promise of any showing that AOT is a responsible party or, in other words, that there is any real claim against AOT. Bradford effectively is trying to skip to discovery without giving AOT any fair notice, even under minimal Rule 8 standards, of the factual basis for a claim. AOT's Motion to Dismiss is granted.

## Responsible party status—Lucas Industries, Envirosource, and Wellspring

Bradford has identified, however minimally, sufficient facts to claim that the other moving third-party defendants may be responsible parties. Thus, Bradford's allegations are sufficient to avoid dismissal at this time.

### Lucas Industries

Bradford alleges that at one point Defendants Dennis G. and Concetta McGuinness owned a portion of the site. Dennis McGuinness is alleged to have been the president of Lucas Industries, which is alleged to have owned a contiguous property. It is alleged that the McGuinnesses intended to use the site for the benefit of their Lucas Industries business until a site assessment, performed by a third party, revealed the contamination. Bradford alleges that, in violation of statute, the discovery of contamination was not reported to the state. The McGuinnesses then sold the site to Bradford. The claims against Lucas Industries are vaguely alleged. Bradford appears to claim that Lucas Industries was an owner or operator, either directly or due to circumstances warranting an application of the alter ego doctrine or reverse-piercing.

Lucas Industries essentially seeks dismissal relying on its corporate separateness and the lack of any allegations that it directly operated the facility. While the allegations regarding direct operator liability are non-specific, circumstances described in the facts encompass a possible

4

claim that Lucas Industries held an interest in the property sufficient to support responsible party status. Discovery of more specific facts is needed in order for the court to make a ruling on the proper disposition of the claim against Lucas Industries.

### Envirosource and Wellspring

Bradford alleges that Envirosource and Wellspring may have liability as parent corporations of or successor entities to American Equities Company. American Equities is alleged to have owned Vermont Lighting Corporation, which owned and operated the polluting coal gasification plant, from 1931 to 1936. Both Envirosource and Wellspring object that the third-party complaint is devoid of any allegations that might warrant direct operator liability, successor liability, or veil-piercing. Though the allegations are generalized, the court concludes that the basic notice function of Rule 8 is minimally satisfied in these instances. Bradford is entitled to reasonable discovery so that these claims may be evaluated on the evidence.

### The statute of limitations—American Water Works, Envirosource, and Wellspring

American Water Works, Envirosource, and Wellspring all argue that Bradford's claims against them are barred by the applicable statute of limitations. Bradford and these defendants agree that the six-year limitations period at 12 V.S.A. § 511 applies to these claims. Defendants and Bradford also apparently agree that the date of accrual is controlled by 10 V.S.A. § 6615(i), quoted in pertinent part below. Based on the language of § 6615(i), Bradford concludes that the date of accrual is the date that the State filed this lawsuit against it. Defendants conclude the date of accrual is the date that ANR first took administrative action against Bradford, or when Bradford spent the first dollar in response; either date is more than six years before ANR's complaint or the third-party complaint was filed. Both supplement their statutory interpretations with competing policy justifications for earlier or later dates of accrual.

The general statute of limitations applicable to civil actions provides:

> A civil action, except one brought upon the judgment or decree of a court of record of the United States or of this or some other state, and except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter.

12 V.S.A. § 511.

The relevant portion of 10 V.S.A. § 6615(i) provides: "In an action brought by the secretary under this section, a responsible person may implead, or in a separate action a responsible person may sue, another responsible person or persons and may obtain contribution or indemnification." Bradford argues that the term "action" in § 6615(i) means "lawsuit," and thus the contribution claim does not accrue until ANR files its lawsuit. Defendants argue that the use of the term "action" in § 6615(i) should be construed more broadly to include administrative action, and thus the contribution claim accrued when ANR first took administrative action against Bradford.

5

The court has reviewed the cases cited by the parties, among them *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 177 Vt. 421, 2004 VT 124 (concluding that ANR's potentially responsible party letter is a claim for "damages" under that party's CGL policy); *State v. Carroll*, 175 Vt. 571, 2003 VT 57 (concluding that the State's *recoupment* claim under 10 V.S.A. § 6615 accrues separately for investigation, remediation, and removal costs, *assuming without deciding* that 12 V.S.A. § 511 applies to the claim at all); and *State v. Carroll*, 171 Vt. 395 (2000) (*Carroll I*). In *Carroll I*, the Vermont Supreme Court ruled that the contribution-plaintiff's contribution claim was not barred by the claim-preclusion doctrine for failure to raise it as a compulsory counterclaim in an earlier case against the contribution-defendant because the State had not taken *any action* against the contribution-plaintiff at that time, and hence there was no basis for a contribution claim at the time of the earlier lawsuit. *Carroll I*, 171 Vt. at 399. These cases do not offer any obvious answer to the accrual issue in this case.

The parties also cite the trial court opinion in *Windsor Sch. Dist. v. State of Vermont*, No. 536-10-96 Wncv, 7 Vt. Tr. Ct. Rep. 99 (Vt. Super. Ct. Feb. 15, 2002) (Bryan, J.). In that case, the court addressed a similar issue regarding a 10 V.S.A. § 6615(i) contribution claim. The contribution-defendant argued that the contribution claim was not "triggered" until ANR filed a lawsuit under 10 V.S.A. § 6615 by operation of the terms of § 6615(i). The court analyzed the issue as framed by the counterclaim-defendant, and concluded that such a contribution claim is "enabled" by administrative action and does not require a lawsuit; the court said no more on the matter. See *Windsor Sch. Dist.*, 7 Vt. Tr. Ct. Rep. at 103. This case also provides no obvious answer to the accrual issue in this case.

The terms of § 6615(i) do not explicitly or implicitly identify any standards for determining the time of accrual of contribution claims for limitations purposes.

Section 6615 expressly treats responsible parties as having joint and several liability to the State for most purposes. See 10 V.S.A. § 6615(c). Under the common law, polluting tortfeasors, in private actions, typically would not be treated as joint tortfeasors. See Restatement (Second) of Torts § 433A cmt. d, illustration 5. That is, even if their actions caused a combined harm, their individual liabilities would be apportioned according to causation. See *id.* § 881. Their liability would not be "joint" in the classic sense because the combined harm could be allocated among them. With no joint liability, under the common law, there would be no basis or need for contribution, which is equitable in nature. See *id.* § 886A cmt. b, c. Section 6615 essentially turns tortfeasors who would not have joint and several liability under the common law into tortfeasors who do have joint and several liability to the State.

Early American courts adopted the English rule against contribution among intentional tortfeasors and allowed it to be extended to negligent tortfeasors, erroneously severing an equitable doctrine from its equitable rationale. Restatement (Second) of Torts § 886A cmt. a (noting that equity should not benefit intentional tortfeasors). Whether by legislation or further development of the common law, this historical quirk of early American common law has now been corrected in nearly all states. D. Dobbs, The Law of Torts § 386, at 1078 (2001) ("[E]ither by statute or judicial decision, a right of contribution is now a generally accepted part of the joint and several liability system . . . ."); accord Restatement § 886A cmt. a. This is consistent with the development of the principle of allocation of tort liability proportionate to wrongdoing that is

6

reflected in the enactment of comparative negligence statutes as a gloss on the common law.

In Vermont, however, the Vermont Supreme Court ruled in 1974 that only the legislature should alter the old rule against contribution among joint tortfeasors. See generally *Howard v. Spafford*, 132 Vt. 434 (1974) (declining to modify the rule against contribution without legislative action, without distinguishing between intentional and negligent tortfeasors). The legislature has never acted, and the Vermont Supreme Court has never overruled *Howard v. Spafford*. See, e.g., *Levine v. Wyeth*, 2006 VT 107, ¶ 39 (relying on *Howard v. Spafford* for the rule against contribution); *Chapman v. Sparta*, 167 Vt. 157, 159 (1997) (same); *Swett v. Haig's, Inc.*, 164 Vt. 1, 5 (1995) (same); *D'Arc Turcotte v. Estate of La Rose*, 153 Vt. 196, 200 (1989) (same); *Murray v. J & B Int'l Trucks*, 146 Vt. 458, 468 (1986) (same); *Hiltz v. John Deere Indus. Equip. Co.*, 146 Vt. 12, 15–16 (1985) (same); *Gilwee v. Barre*, 138 Vt. 109, 111 (1980) (same); *Zaleski v. Joyce*, 133 Vt. 150, 158 (1975) (same).

Thus, in Vermont, if nowhere else, there is no general right of contribution among joint negligent tortfeasors because there is no statute specifically authorizing such a contribution claim. Section 6615(i) specifically authorizes such a claim in the context of pollution abatement cases. It specifies that the contribution-plaintiff may bring the claim in the State's § 6615 lawsuit itself, or in a separate lawsuit, and says little else about it. It does not express any preference for a particular accrual method, and because neither common law nor statutory law in Vermont has recognized contribution claims, we have not developed a jurisprudence in this area.

The issue is: when, or how, does the sort of contribution claim authorized by § 6615(i) accrue? The Restatement warns:

> The statute of limitations may offer some difficulty, since the cause of action for contribution cannot arise until full payment has been made, which may be a great deal later than the original injury. The contribution suit should therefore be made subject to its own statute of limitations, sufficiently short to afford protection against undue extension of the tortfeasor's liability. These questions are for the legislature and not within the scope of this Restatement.

Restatement § 886A cmt. g. Those unresolved "questions" present a difficult issue in this case. Vermont has no limitations statute that is tailored to contribution claims, and contribution claims can accrue in different ways. See 18 Am.Jur.2d Contribution § 93 (describing numerous different approaches to the accrual of contribution claims); see also *id.* § 94 (discussing a rolling accrual method appropriate when partial payments are made on an underlying obligation).

The parties' arguments did not analyze the accrual issue within the framework identified above, as they focused more narrowly on the language of § 6615(i). The court declines to rule as a matter of law on when a contribution claim accrues without the benefit of both a specific factual context upon which to base a ruling of law, and further briefing. In a complex case like this, Rule 12(b)(6) is not an effective mechanism for sorting out this issue, as neither the facts nor the law are sufficiently developed to support a well-reasoned analysis.

## ORDER

For the foregoing reasons,

1) The Agency of Transportation's Motion to Dismiss is *granted*, and

2) The Motions to Dismiss of Lucas Industries, American Waterworks, Envirosource, and Wellspring are *denied*.

Dated at Montpelier, Vermont this 16th day of May 2008.

Mary Miles Teachout
Presiding Judge