940 A.2d 674 (2007)
2007 VT 99
Jean SMEDBERG
v.
DETLEF'S CUSTODIAL SERVICE, INC.
No. 05-396.
Supreme Court of Vermont.
September 21, 2007.
*676 Christopher McVeigh, Burlington, for Plaintiff-Appellant/Cross-Appellee.
Kaveh S. Shahi of Cleary Shahi & Aicher, P.C., Rutland, for Defendant-Appellee/Cross-Appellant.
Present: REIBER, C.J., DOOLEY, SKOGLUND and BURGESS, JJ., and ALLEN, C.J. (Ret.), Specially Assigned.
REIBER, C.J.
¶ 1. Plaintiff Jean Smedberg appeals from a jury verdict awarding her $0 for pain and suffering after she suffered cervical spine injuries in a slip and fall at her workplace. She argues that the jury's verdict was unsupported by the evidence and that the superior court therefore erred in denying her motion for a new trial or, in the alternative, for additur, pursuant to Vermont Rule of Civil Procedure 59. Defendant Detlef's Custodial Service (DCS or Detlef's) cross-appeals, asserting that the superior court erred by: (1) denying defendant's Rule 50 motion, (2) denying defendant's motion to substitute plaintiff's workers' compensation insurance carrier as plaintiff, and (3) awarding prejudgment interest on plaintiff's lost-wages and medical-expenses awards. We reverse the trial court's ruling on the Rule 59 motion and affirm in all other respects.[1]
¶ 2. The facts, which are largely uncontested, may be briefly summarized. Plaintiff, an employee of Central Vermont Public Service (CVPS) in Rutland, slipped and fell in the hallway at her workplace and suffered a cervical spine injury that ultimately required her to undergo spinal fusion surgery. Plaintiff sued DCS, which performed cleaning services for CVPS, alleging negligence for lack of warning about slippery conditions in the hallway. Plaintiff also pursued a workers' compensation claim against CVPS; that claim eventually settled.
¶ 3. In the negligence action, DCS disclaimed negligence, contending that plaintiff did not fall due to slippery conditions. DCS also moved, in advance of the trial, for judgment as a matter of law at the conclusion of plaintiff's case in chief. That motion was denied. At the conclusion of the trial, the jury found DCS liable to plaintiff, but also found that plaintiff was 50% at fault. The jury awarded plaintiff $27,015.25 in medical damages and $45,500.00 in lost wages, but awarded no damages for past or future pain and suffering or loss of enjoyment of life. The award for medical damages was the exact amount of plaintiff's claimed damages for this element of her claim, while the lost-wage award was approximately 60% of plaintiff's claimed lost wages. The medical and lost-wages awards were reduced by 50% for plaintiff's negligence, and judgment was entered for $36,257.63 plus interest and costs.
¶ 4. Plaintiff then filed a number of post-trial motions, two of which are implicated in the instant appeal. First, plaintiff *677 moved for a new trial solely on damages or, in the alternative, for additur of $150,000, based on the assertion that the jury had "disregarded the reasonable and substantial evidence or found against the evidence through passion, prejudice, or some misconstruction of the matter." DCS opposed plaintiff's motion, contending that the verdict should stand or, "if the court is inclined to find that the verdict was compromised," a new trial should be had on all issues. Plaintiff's motion was denied. Second, plaintiff moved for costs and prejudgment interest. This motion was granted in part, and the trial court awarded plaintiff $11,550.62 in prejudgment interest "upon finding that her damages were for a sum certain." These appeals followed.
I. The Motion for New Trial or Additur
¶ 5. Rulings on motions for new trial are within the discretion of the trial court. Irving v. Agency of Transp., 172 Vt. 527, 528, 768 A.2d 1286, 1289 (2001) (mem.). When reviewing a trial court's decision on a motion for new trial, we afford the decision "all possible presumptive support, similar to the support the trial court owes to a jury verdict." Brueckner v. Norwich Univ., 169 Vt. 118, 133, 730 A.2d 1086, 1097 (1999) (quotation omitted). We view the evidence in the light most favorable to the nonmoving party. Id. at 120-21, 730 A.2d at 1089. However, a jury's verdict should not be upheld "if there is evidence that the jury compromised its verdict." Ball v. Melsur Corp., 161 Vt. 35, 44, 633 A.2d 705, 712 (1993) (citation and quotation omitted).
¶ 6. The superior court denied plaintiff's motion for a partial new trial or additur on the basis that the court could not "conclude with certainty on the record that the jury was without a basis to find plaintiff's evidence on pain and suffering unpersuasive." Plaintiff contends that the jury had no basis to find that she did not endure any pain or suffering as a result of the slip and fall and ensuing spinal surgery, and that the superior court therefore erred in denying her motion for a partial new trial or additur.
¶ 7. As noted, plaintiff's motion clearly sought a new trial solely on the issue of damages; plaintiff could have, but did not, request a new trial on all issues. See V.R.C.P. 59(a) ("The court before which an action has been tried may on motion grant a new trial to all or any of the parties and on all or part of the issues for any of the reasons for which new trials or rehearings have heretofore been granted in actions at law or in suits in equity in the courts of this state."). As a general matter, a new trial may properly be limited to a single issue only where the issue sought to be retried is clearly separable from the other issues. See Gasoline Prods. Co. v. Champlin Refining. Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931) ("Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."). Our review of plaintiff's Rule 59 motion thus has two parts: first, whether the trial court erred in denying the motion; and second, whether a new trial should be on all issues or on damages alone.[2]

*678 a. Whether a new trial is necessary
¶ 8. The evidence is undisputed that plaintiff slipped, hit her head on a concrete wall, and fell to the floor. At trial, defendant did not claim that plaintiff's later cervical fusion surgery was not reasonable and necessary treatment for her accident-related injuries. Indeed, the jury explicitly found as much when it determined that plaintiff incurred the full amount of her claimed medical expenses as a result of the accident, reduced by 50% for her own negligence. The jury also awarded plaintiff approximately 60% of her claimed lost wages. The question, then, is whether the $0 pain-and-suffering award was consistent with the rest of the verdict and was supported by the evidence, or reflected an improper compromise or decision based on prejudice or confusion. If "the jury has disregarded the reasonable and substantial evidence, or found against it, through passion, prejudice, or some misconstruction of the matter, that judgment requires that the court's discretion be exercised to set aside the verdict." Weeks v. Burnor, 132 Vt. 603, 609, 326 A.2d 138, 141 (1974).
¶ 9. We faced a similar question in Nourse v. Austin, in which a jury found liability and appeared to award nearly all of the plaintiffs' claimed medical expenses but awarded no more than $110 for their pain and suffering. 140 Vt. 184, 185, 436 A.2d 738, 739 (1981). We reversed the trial court's denial of a new trial because "[t]he award, while adequate to cover the medical expenses, [was] clearly inadequate to cover pain and suffering." Id. Our opinion in Nourse was brief, but its logic was sound. Here, there is no plausible explanation for a jury verdict finding defendant liable for back and neck injuries, finding defendant liable for her medical expenses, including the cost of invasive surgery, but awarding nothing for past or future pain and suffering. There was reasonable and substantial evidence at trial that, as a result of her back and neck injuries, plaintiff had surgery and suffered pain in the past, and that she would suffer pain in the future.
¶ 10. In addition to plaintiff's own testimony about her pain, the record reflects the testimony of two medical witnesses. One, a pain-management specialist, testified that he "heavily suggested" that plaintiff undergo cervical decompression and fusion surgery when her ongoing physical-therapy regimen failed to abate her pain. He noted that, prior to surgery, "[s]he could barely tolerate simple sitting and standing." He testified that the surgery is intended both immediately to take the pressure off the nerves in the spine to *679 relieve pain and permanently to immobilize a portion of the spine so that the nerves will not be impinged upon and cause pain again. The first objective is accomplished by "cutting away some of the disk material that's putting direct pressure on the nerve." The second requires attaching a piece of metal or bone to the spine to "restrict the motion so that the vertebrae don't bend up and down and don't create a pinching [e]ffect on the nerve." Plaintiff underwent the surgery, and the doctor testified that afterwards "[t]here was still spasm and guarding in the muscles surrounding the neck, which were quite painful to her." Finally, the pain-management specialist testified that plaintiff showed no signs of malingering or exaggerating her pain, and that he expected her pain would last for the rest of her life.
¶ 11. The second doctor to testify, a neurosurgeon, described the decompression and fusion surgery he performed on plaintiff. The surgery, which the doctor agreed was "very invasive," was intended to address "neck and right arm pain" caused by a disk protrusion. When asked "what were the factual underpinnings of the surgery?" the doctor mentioned only pain relief. The surgery, as it was performed on plaintiff, involved inserting a small titanium "cage" between two vertebrae in her neck to immobilize them until they eventually fused together. The fusion prevents further pinching of the "nerve roots," which was the underlying cause of plaintiff's pain. The cage, in this case, was apparently inserted via an incision through plaintiff's throat. The surgeon further testified that plaintiff had "probably more [post-surgery] arm pain than most people do" due to the "settling" of her bones around the titanium cage.
¶ 12. Although our review of the jury's awardand the trial court's decision on the motion for new trialis deferential, we will not endorse a verdict that fails to compensate a plaintiff for damages proven, Nourse, 140 Vt. at 185, 436 A.2d at 739, or one that is internally inconsistent or evidences compromise. Ball, 161 Vt. at 44, 633 A.2d at 712. Where, as here, the jury has evidently "disregarded the reasonable and substantial evidence, or found against it, through passion, prejudice, or some misconstruction of the matter, that judgment requires that the court's discretion be exercised to set aside the verdict." Weeks, 132 Vt. at 609, 326 A.2d at 141. See also Lombardi v. Cobb, 99 Conn.App. 705, 915 A.2d 911, 914 (2007) ("Because the plaintiff s medical expenses and lost wages related to her treatment for back and shoulder pain, the jury necessarily found that she had experienced pain, and it therefore should have awarded her noneconomic damages."). Viewing the evidence in the light most favorable to the verdict does not cure it of its internal inconsistency. We conclude that the denial of the motion for new trial must be reversed, and turn to the question of the proper scope of the new trial on remand.

b. The scope of the new trial
¶ 13. We have not closely considered the question of what the scope of a new trial should be under circumstances like these.[3] In Nourse, the plaintiffsa husband and wife who were injured in a car accidentmoved for a new trial on damages alone after a jury verdict awarded no *680 more than $110 for their general damages despite finding liability and awarding special damages. In a brief opinion, we remanded for a new trial on all issues: "Since it appears that the verdict itself was the result of compromise . . justice and fairness require that the cause be remanded for a new trial on all issues, including liability." 140 Vt. at 186, 436 A.2d at 739. We take this opportunity to elaborate on the Nourse rationale.
¶ 14. Two California cases, Leipert v. Honold, 39 Cal.2d 462, 247 P.2d 324 (1952), and Hamasaki v. Flotho, 39 Cal.2d 602, 248 P.2d 910 (1952), suggest the same result, but offer a more substantial analysis than Nourse. In Leipert, a personal-injury plaintiff moved for a partial new trial;(on damages only) after a jury verdict of $2,200 for severe head injuries, a broken pelvis, ruptured bladder, and abdominal operation. The motion was granted, and the defendant appealed. The California Supreme Court concluded that the trial court had abused its discretion in granting the motion for partial new trial because: (1) the damages were inadequate, (2) the issue of liability was close, and (3) the circumstances indicated that the verdict was probably the result of prejudice, sympathy, or compromise. 247 P.2d at 327. Both the defendant and the plaintiff in Leipert stated that, if the order granting the new trial were reversed, they wished the underlying judgment to stand rather than conduct a new trial on all issues. Therefore, the California Supreme Court affirmed the judgment, but did not foreclose the possibility of a complete new trial under similar circumstances if a party requested one. Id. at 329.
¶ 15. In Hamasaki, 248 P.2d at 911, a little boy darted into the street and sustained serious injuries when he was hit by a car. The jury returned a verdict for the boy for $1,000, including a stipulated $817 for medical expenses. That left $183 to cover his general damages (pain and suffering) for a brain concussion, broken clavicle, skull fractures, and other injuries. The defendants moved for a new trial on all issues, and the motion was denied. The plaintiffs moved for a partial new trial on damages only, and the motion was granted after defendants refused an additur of $7,500. The defendants appealed, and the California Supreme Court reversed. Id. at 915. Citing Leipert, the court concluded that a new trial on damages only was inappropriate because: (1) the damages were inadequate, (2) the issue of liability was close, and (3) the inadequacy of the damages suggested compromise. Id. at 914. The controlling question on appeal in Hamasaki therefore was "whether or not the trial court, on plaintiffs' motion for a new trial on the issue of damages only, had power to grant a new trial on all issues." Id. at 913. The California statute governing new trials, similar to V.R.C.P. 59, provided that a verdict "may be vacated . . . in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved." Id. at 915. The court held that "[i]f the limited new trial sought would be prejudicial to the opposing party, the granting of a complete new trial is the most reasonable response to the motion." Id.
¶ 16. The Connecticut Supreme Court similarly concluded, in Malmberg v. Lopez, 208 Conn. 675, 546 A.2d 264 (1988), that a verdict finding a defendant liable for wrongful death but awarding no damages required a new trial on all issues. In Malmberg, as here, the issue of liability was strongly contested at trial. Id. at 267. The court noted that "`where . . . liability is contested and an appellate court is unable to infer whether upon a new trial a jury would find in favor of the defendant or in favor of the plaintiff an appellate court must remand the case for a trial on *681 all issues.'" Id. (quoting Freshwater v. Booth, 160 W.Va. 156, 233 S.E.2d 312, 316 (1977)); accord McNall v. Farmers Ins. Group, 181 Ind.App. 501, 392 N.E.2d 520, 525 (1979).
¶ 17. We conclude that the standards announced in these cases are consistent with our prior cases and our rules, and so adopt the following standards today. As noted above, a new trial on damages alone will not generally be proper unless the issue to be retried is clearly distinct from the others and may be tried alone without injustice. See Gasoline Prods., 283 U.S. at 500, 51 S.Ct. 513. In particular, a new trial on damages alone is not appropriate when: first, the issue of liability is close; second, the damages awarded are grossly inadequate; and third, the circumstances indicate that the verdict was the result of prejudice or an improper compromise. See Leipert, 247 P.2d at 327. Here, all three of these circumstances were present, and it is not at all clear that the damages issue is "distinct and separable" from the hotly contested issue of liability.
¶ 18. First, the issue of liability was very close. Under Vermont law, defendants are not liable for harms caused when the plaintiff's negligence exceeds the defendant's. 12 V.S.A. § 1036. Here, the evidence introduced by both sides focused principally on liability, and the jury concluded that plaintiff and defendant were each 50% negligent. As reflected by the 50-50 verdict, the liability issue could not have been closer.
¶ 19. Second, the damages awarded $0 for past and future pain and suffering and loss of enjoyment of lifewere grossly inadequate given the evidence adduced at trial. See supra, ¶ ¶ 10-12. This is not a case where plaintiffs injuries are de minimis or speculative, or where medical expenses were incurred only to rule out the possibility of injury. Cf. Hunter v. Sorensen, 201 Neb. 153, 266 N.W.2d 529, 533 (1978) (affirming $0 pain-and-suffering verdict because "jury could have reasonably concluded that plaintiff suffered only a bruise to his knee as a result of the accident"); Whitney v. Akers, 247 F.Supp. 763, 765 (W.D.Okla.1965) (upholding $0 pain-and-suffering verdict because physical injuries were minor and only medical expenses incurred were for examination to verify that no serious injuries were caused). Rather, plaintiff underwent invasive surgery involving "cutting [her] throat open" to reach the cervical discs that were herniated when she slipped in the hallway.
¶ 20. There was no dispute at trial over whether the surgery was reasonable and necessary, nor does the record suggest that the surgery was meant to remedy a preexisting condition or anything other than injuries sustained in the hallway slip and fall. According to plaintiffs doctor's uncontradicted testimony, she attempted various nonsurgical methods to manage the pain and avoid surgery, but without success. She was offered the choice to attend a three-week semi-residential intensive treatment program, but declined on the recommendation of her doctor, who testified "I did not feel that she would be able to tolerate [the] intensive program. She could barely tolerate simple sitting and standing, let alone go through a heavy exercise program for three weeks, [so I] heavily suggested that she reconsider her position on the surgery." Under these facts, a $0 pain-and-suffering award was grossly inadequate.
¶ 21. Finally, although there is no evidence of compromise apart from the verdict itself, we conclude that the inconsistencies in the verdict itself strongly suggest that it was a compromise. See Stanton v. Astra Pharm. Prods., Inc., 718 F.2d 553, 577 (3d Cir.1983) ("Inconsistent *682 answers to the other special [interrogatories] further suggest that the verdict was a compromise."); Hatfield v. Seaboard Air Line R., 396 F.2d 721, 724 (5th Cir.1968) (jury responses to special interrogatories finding defendant liable for plaintiffs serious injuries but awarding nominal damages "can be seen only as the result of either a compromise on one of the liability issues or as an attempt to render a verdict for [defendant] with [defendant] paying the costs."); Hamasaki, 248 P.2d at 913. Because we cannot say on this record that the jury finally determined liability, the new trial must be on all issues.

II. The Rule 50 Motion
¶ 22. DOS asserts that the superior court erred in denying its motion for judgment as a matter of law under V.R.C.P. 50. That motion averred that, because plaintiff and DCS's employees were co-employees of CVPS, workers' compensation recovery was her sole remedy and her negligence action was barred by 21 V.S.A. § 622. Plaintiff counters DCS's arguments, claiming that the workers' compensation bar does not apply here because DCS was not her statutory employer, and therefore she and DCS's employees were not statutory co-employees. For the reasons articulated below, we agree with plaintiff.
¶ 23. We review the denial of the Rule 50 motion according to well-settled standards: we view all evidence in the light most favorable to the nonmoving party, excluding the effect of any modifying evidence, Monahan v. GMAC Mortgage Corp., 2005 VT 110, ¶ 2, 179 Vt. 167, 893 A.2d 298, and we review de novo the legal conclusions underlying the trial court's ruling. See Perry v. Green Mountain Mall, 2004 VT 69, ¶ ¶ 7.-11, 177 Vt. 109, 857 A.2d 793 (reviewing de novo the legal basis for trial court's Rule 50 ruling).
¶ 24. Section 622 provides that workers' compensation is the exclusive remedy for an employee injured during the course of employment and entitled to recover under the workers' compensation statutes, except when the employer has failed to comply with the security provisions of 21 V.S.A. § 618(b), or when the dual-liability provisions of 21 V.S.A. § 624 apply. Section 624 allows injured employees to bring personal injury actions against third parties "under circumstances creating a legal liability to pay the resulting damages in some person other than the employer." Because § 624 allows personal injury actions against third parties and § 622 bars such actions against employers, our review of the ruling on the Rule 50 motion turns on the definition of "employer" in 21 V.S.A. § 601(3).
¶ 25. "Employer" is defined in that section as follows:
. . . [A]ny body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer, and includes the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.
Id. We construed this provision in a recent case, Frazier v. Preferred Operators, Inc., 2004 VT 95, ¶ 8, 177 Vt. 571, 861 A.2d 1130 (mem.). We note, as we did in Frazier, that the legislative intent underlying the definition included an intent "`to impose liability for workers' compensation benefits upon business owners who hire independent contractors to carry out some phase of their business.'" Id. (quoting Edson v. State, 2003 VT 32, ¶ 6, 175 Vt. 330, 830 *683 A.2d 671). Our inquiry in previous cases has turned on "whether the type of work being carried out by the independent contractor is the type of work that could have been carried out by the owner's employees as part of the regular course of business." Edson, 2003 VT 32, ¶ 7; accord Vella v. Hartford Vt. Acquisitions, Inc., 2003 VT 108, ¶ 7, 176 Vt. 151, 838 A.2d 126. But Edson, Vella, and our other cases in this area evaluated whether a company that employed a contractor to perform a discrete function was the "employer" of the contractor's employee for purposes of § 601(3). See Edson, 2003 VT 32, ¶ 6 (state liquor agency is statutory employer of driver injured while working for business contracted to distribute liquor); Vella, 2003 VT 108, ¶ ¶ 8-10; King v. Snide, 144 Vt. 395, 401, 479 A.2d 752, 755 (1984) (woodlot manager is not statutory employer of person injured while working for contractor hired to log lot); O'Boyle v. Parker-Young Co., 95 Vt. 58, 61, 112 A. 385, 386 (1921) (manufacturer of sounding boards is employer of driver hired by hauling contractor to transport lumber to manufacturer's factory); Packett v. Moretown Creamery Co., 91 Vt. 97, 99, 100-01, 99 A. 638-40 (1917) (creamery business is not statutory employer of person working for independent contractor building new creamery).
¶ 26. DCS contends that we should follow Edson and O'Boyle and conclude that DCS, a cleaning service hired to clean the offices where plaintiff worked for CVPS, is her statutory employer. But this would be entirely contrary to the plain language of the statute, and to the cases just cited. Plaintiff was an employee of CVPS, which also employed DCS to perform an entirely unrelated function that is relatively peripheral to its central business of generating and transmitting electricity. We see no reason to broaden the scope of § 601(3) so radically as defendant proposes, and we find no error in the denial of DCS's Rule 50 motion.

III. The Motion for Substitution of Parties
¶ 27. Defendant would also have us find error in the superior court's denial of defendant's motion for substitution of CVPS' workers' compensation insurance carrier as plaintiff following the workers' compensation settlement. We decline to do so.
¶ 28. DCS concedes that plaintiff was the real party in interest at the beginning of this litigation, but contends that plaintiff s subsequent settlement of her workers' compensation claim made CVPS the real party in interest, by operation of 21 V.S.A. § 624. In support of this claim, DCS notes that, after the settlement, plaintiff was represented by counsel who had represented CVPS in the workers' compensation proceeding. Although DCS cites Professional Conduct Rule 1.7(b) which bars representation of a client when that representation "may be materially limited by the lawyer's responsibilities to . . . a third person"in support of this position, DCS does not allege that the rule was actually violated. Rather, DCS cites Rule 1.7 for the proposition that counsel could not have represented plaintiff "had her interest in this action not become subservient to that of her employer."
¶ 29. Section 624 of Title 21 governs recoveries from third parties in workers' compensation cases. First, § 624(a) provides that a workers' compensation recovery is not an employee's exclusive remedy when a third party is also liable for dam ages. As DCS notes, § 624(a) permits an employer or its insurance carrier to commence an action against liable third parties if the employee fails to do so. Section 624(b) governs settlement of claims by employees, employers, and their respective *684 insurance carriers, and § 624(c) provides that settlements by employees do not bar further action by the employer or its insurance carrier. Section 624(e) provides that damages recovered by employees from third parties will be applied as follows: first, the employer (or its insurance carrier) shall be reimbursed for any amounts paid or payable to the date of recovery; second, the employee is paid the balance of the recovery, but that payment is treated as an advance on any future payments due to the employer.
¶ 30. The Vermont Rules of Civil Procedure require that every action be prosecuted in the name of the real party in interest. V.R.C.P. 17(a). Vermont's Rule 17 is, in pertinent part, identical to the federal rule. See F.R.C.P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest."). The effect of the federal rule "is that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1543, at 334 (2d ed.1990). However, "it is not necessary that there always be only one real party in interest." Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt., Inc., 620 F.2d 1, 4 (1st Cir.1980). The identical provision of the Vermont rule must be construed to the same effect.
¶ 31. We therefore do not agree with DCS that plaintiff was no longer a real party in interest after she settled her workers' compensation claim. Section 624(e) makes clear that, although CVPS or its insurance carrier would, after the settlement, have had a right to reimbursement from any recovery Ms. Smedberg made in her claim against DCS, plaintiff remained an interested party. Any amount recovered beyond the amount due to CVPS as reimbursement would have been hers as an advance on future workers' compensation payments. Any amount greater than the sum of past and future workers' compensation payments would be plaintiff's alone.
¶ 32. Because 21 V.S.A. § 624(a) explicitly authorizes injured employees to proceed against third parties, plaintiff is a real party in interest under V.R.C.P. 17. The fact that 21 V.S.A. § 624(e) allows an employer to be reimbursed from recoveries awarded to employees does not compel a different result. We also find DCS's argument from the rules of professional conduct unpersuasive. Accordingly, we find no error in the superior court's denial of DCS's motion for substitution of parties.

IV. Prejudgment Interest
¶ 33. Finally, DOS finds fault with the superior court's award of prejudgment interest to plaintiff. The superior court, citing Rule 54 of the Vermont Rules of Civil Procedure, awarded plaintiff $11,550.62 in prejudgment interest because "her damages were for a sum certain."
¶ 34. DOS cites Estate of Fleming v. Nicholson, 168 Vt. 495, 502, 724 A.2d 1026, 1031 (1998), for the proposition that a trial court may award prejudgment interest only: (1) when the damages are liquidated or reasonably ascertainable as of the date of the tort, in which case the award is mandatory or (2) as a matter of discretion, but only upon a finding that plaintiff was harmed by delay in reimbursement. DCS's principal contention is that no prejudgment interest should have been awarded because the sums in question plaintiff's medical expenses and lost wageswere not readily ascertainable at the time of the tort. DCS also contends, in the alternative, that plaintiff was not harmed by the delay in payment because her medical payments were made by third parties. Plaintiff argues that the amounts *685 awarded for lost wages and medical bills were readily ascertainable, and that the trial court therefore did not abuse its discretion in awarding prejudgment interest. While plaintiff appears to be mixing the two avenues of analysis from our earlier prejudgment-interest cases, we agree with the gravamen of plaintiffs argument, and disagree with defendant's first argument. Accordingly, we need not consider defendant's second argument in order to affirm the trial court's award of prejudgment interest.
¶ 35. Prejudgment-interest awards are governed by V.R.C.P. 54. Rule 54(a) was amended in 1981 to "make[ clear that the amount of a judgment includes prejudgment interest and costs." Reporter's Notes, 1981 Amendment to V.R.C.P. 54. Rule 54 provides that "[i]n an action where monetary relief is awarded, the amount of the judgment shall include the principal amount found to be due, all interest accrued on that amount up to and including the date of entry of judgment, and all costs allowed to the prevailing party." V.R.C.P. 54(a).
¶ 36. We took the opportunity, in Fleming, to clarify the import of the 1981 amendment, and of our holding in d'Arc Turcotte v. Estate of LaRose, 153 Vt. 196, 569 A.2d 1086 (1989). Fleming, 168 Vt. at 500-03, 724 A.2d at 1028-32. We noted that Turcotte and Rule 54(a), read together, mandate the award of prejudgment interest in cases where damages are "liquidated or readily ascertainable at the time of the tort" and allow prejudgment interest in the trial court's discretion where such an award is "required to make the plaintiff whole." Fleming, 168 Vt. at 501, 724 A.2d at 1030. Here, the trial court premised its award of prejudgment interest on the first theory; the court noted that the award was proper because the medical and lost-wage damages were for a sum certain.
¶ 37. Plaintiffs lost wages and medical expenses were reasonably ascertainable, and, the trial court properly awarded prejudgment interest thereon. As we noted in Fleming, "Wile mere fact that plaintiff and defendant presented conflicting theories of damages does not . . . automatically lead to the conclusion that the damages were not reasonably ascertainable." Id. at 502 n. 3, 724 A.2d at 1031 n. 3. As some commentators have noted, requiring prejudgment interest for medical expenses incurred and wages lost prior to trial is proper because "[b]oth of these items can be referred to an objective standard in the same manner as damages for breach of contract." 2 S. Speiser et al., The American Law of Torts § 8:10, at 531. Thus, although lost-wage and medical-expense claims are "`unliquidated' in the sense that a precise amount may not be known to either party, they are `liquidated' in that they can . . . be measured against a reasonably certain standard." Id. The damage measure for medical expenses is simply "the reasonable value of the services rendered to the plaintiff." Id. Defendant advances no principled reason that prejudgment interest should not be awarded on these damages, and its conclusory argument that these compensatory damages were uncertain as to amount is unavailing.
¶ 38. Rule 54 does not require that the amounts be precisely or infallibly ascertainable, only that they be reasonably so. Here, plaintiff's salary was known with reasonable certainty, as was the general nature of her injuries and the likely course of treatment. Indeed, as each medical expense was incurred, its cost and date was known precisely. It works no unfairness on tortfeasors to require them to pay prejudgment interest on medical expenses flowing from their wrongs. By contrast, *686 declining to extend Rule 54's prejudgment-interest provisions to medical expenses would work substantial unfairness on any plaintiff sustaining such damages due to a tortfeasor's wrong.
¶ 39. We therefore decline to adopt DCS's proposed rule, which would appear to limit prejudgment interest to a very narrow class of cases in which a known sum of money was converted to the tortfeasor's use on a precisely known date. Prejudgment interest on compensatory damage awards is meant to restoreto the extent possibleharmed plaintiffs to the financial position they would have enjoyed but for the tort, and should not be limited to such a tiny fraction of tort cases. Defendant's proposed rule would seemingly prevent any plaintiff with a lost-wage or medical-expenses claim from recovering such interest, and therefore from being made whole. Under defendant's regime, too, "defendants would always be able to unilaterally defeat an award of prejudgment interest simply by presenting a conflicting theory of damages," a result we explicitly rejected in Fleming. 168 Vt. at 502 n. 3, 724 A.2d at 1031 n. 3. We find no error in the trial court's award of prejudgment interest on plaintiff's lost-wage and medical-expense claims.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
ALLEN, C.J. (Ret.), dissenting in part.
¶ 40. I concur with parts II, III, and IV of the majority opinion. I also agree that the damages award was inadequate and that a new trial on damages alone would be improper. I dissent, however, from the majority's mandate granting a new trial on all issues, considering that neither party necessarily wants such a result.
¶ 41. Plaintiff moved for a new trial "solely" on the issue of damages. Nothing in either her motion or in her appellate brief suggests that she desires a new trial on all issues. This Court has concluded that she is not entitled to her requested relief, but has also decided that the damages were inadequate. I would remand the matter to the trial court with leave to plaintiff to amend her motion to request a new trial on all issues if she is so inclined.
¶ 42. I would further direct the trial court to grant the amended motion if made after defendant has first been given an opportunity to accept an additur to the verdict in such amount as the trial court deems reasonable. See V.R.C.P. 59(a) ("A new trial shall not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court deems to be reasonable."); see Hoague v. Cota, 140 Vt. 588, 593, 442 A.2d 1282, 1284 (1982) (noting that, pursuant to Rule 59, a trial court is "empowered, and in fact required" to offer a defendant an additur in an amount it deems reasonable). The majority's holding that a defendant is not entitled to an opportunity to accept an additur when there is a compromise verdict effectively amends Rule 59, thereby circumventing this Court's administrative orders regarding the adoption and amendments to the rules and the reporting requirements to the, Legislature. See 12 V.S.A. §§ 1-4. After the majority's holding today, the third sentence of Rule 59(a) now must be read as follows: "A new trial shall not be granted solely on the ground that the damages are inadequate" when a verdict is the result of compromise. It is unclear whether an additur is still required when the trial court concludes that the inadequacy was the result of passion or prejudice.
¶ 43. In her original motion before the trial court, plaintiff moved, in the alternative, for an additur, and the plain language *687 of V.R.C.P. 59(a) requires the court to offer one to defendant before a new trial is granted. This would be a fair result for both parties. If plaintiff elected not to seek a new trial and accepted the original jury verdict, she would be in the same position as if she had not appealed the verdict. Defendant would not be prejudiced by such a result in the sense that, notwithstanding its cross-appeal, it has not challenged the jury's finding of liability or the amount of damages awarded to plaintiff. On the other hand, if plaintiff elected to seek a new trial, defendant would have the opportunity to accept a reasonable additur imposed by the trial court in lieu of a new trial. For her part, plaintiff could appeal if she were not satisfied with the additur imposed by the court. This way, both parties could avoid the unwanted and unnecessary expense of going through another trial.
¶ 44. I am authorized to say that Justice Dooley joins in this dissent.
NOTES
[1] We consider the issues raised on cross-appeal because they are likely to recur on remand.
[2] Although plaintiff's motion requested only a partial new trial, we have no doubt that the trial court had the power to order a complete new trial. See Hamasaki v. Flotho, 39 Cal.2d 602, 248 P.2d 910, 913 (1952) (where question of liability is close, damages are inadequate, and compromise is apparent, "most reasonable response" to motion for new trial on damages alone is a new trial on all issues). For the same reason, we do not believe that the dissent's reading of Rule 59 is the correct one: an additur is not an appropriate remedy where the verdict is internally inconsistent or suggests compromise. See Chenell v. Westbrook College, 324 A.2d 735, 738 (Me.1974) (holdingunder Maine's Rule 59, from which our rule is derivedthat a new trial without an opportunity for additur "is legally proper only when there is a sustainable finding not only that the damages are inadequate but also that such inadequacy reflects a compromise"); Shere v. Davis, 95 Nev. 491, 596 P.2d 499, 500-01 (1979) ("[D]ue to the interrelationship of the liability and damage issues, the case was not a proper one for a new trial limited to damages. Thus, additur was also inappropriate. Although the motion requested only additur or a new trial limited to the issue of damages, the trial court had the power to grant a new trial on all issues." (citations omitted)). See also Food Lion v. Jackson, 712 So.2d 800, 803 (Fla.Dist.Ct.App. 1998) (reversing trial court's order of additur and remanding for a new trial on liability and damages where verdict indicated compromise; noting that, despite rule's additur language, "we do not believe that the legislature intended to preclude a court from ordering a new trial on both damages and liability [without opportunity for additur] where the jury compromised the verdict.").
[3] Our cases concerning the scope of new trials under Rule 59 have not been on all fours procedurally with the instant case. In Corbin v. Dickerson, we affirmed a trial court's grant of a motion for new trial on all issues, where the jury appeared to award only 1% of the proven damages to a plaintiff due to an apparent misunderstanding of the law of comparative negligence. 155 Vt. 486, 490, 586 A.2d 1104, 1106 (1990).