Daniel MELO, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Case No. 2:10–cv–104.

United States District Court, D. Vermont.

May 26, 2011.

Chad V. Bonanni, Esq., Bergeron, Paradis & Fitzpatrick, Essex Junction, VT, John J. Bergeron, Bergeron, Paradis & Fitzpatrick, LLP, Burlington, VT, for Plaintiff.

Richard H. Wadhams, Jr., Pierson Wadhams Quinn Yates & Coffrin, LLP, Burlington, VT, for Defendant.

*Memorandum and Order*

WILLIAM K. SESSIONS III, District Judge.

Plaintiff Daniel Melo has filed a motion in limine seeking a pretrial order that will define the reasonable value of his medical bills to be the amount his healthcare providers charged him for his care, and not the amount that the providers received from his healthcare insurance; and exclude from evidence any testimony, references and/or arguments that his lost income should be limited to an after-tax amount. Pl.'s Mot. in Limine Re: Medical Specials & Lost Wages 1 (ECF No. 37). For the reasons that follow, the motion is **granted in part and denied in part.**

## I. Background

Melo was struck by a vehicle operated by an underinsured driver. The driver's insurance company tendered the limits of its policy, and Melo seeks compensation

from Defendant Allstate Insurance Company ("Allstate"), his automobile insurance carrier, for his injuries and losses that exceed the amount received from the driver's insurance. Allstate has admitted its liability for underinsured motorists benefits, and the only issue remaining for trial is the amount of Melo's damages.

Melo sustained serious injuries; he was hospitalized for nineteen days, and underwent extensive outpatient care. The total amount billed by his medical providers as of the date of his motion was $149,816.17. He avers that he will require surgery in the future, and will incur significant future medical expenses.

Melo, owner of Shelburne Dental Group in Shelburne, Vermont, also suffered significant loss of income from his dental practice as a result of the accident. He was unable to work from October 4, 2008, to January 4, 2009. He has calculated his loss of income at $174,231.00.

Melo asserts that his medical services should be valued at the amounts actually charged by his medical providers. Allstate contends that the only admissible evidence of the value of Melo's medical services is the amount actually accepted by his medical providers as payment in full.

Melo also asserts that reimbursement for lost income should be valued at his net operating income after business expenses but before taxes. Allstate counters that it is proper for a jury to hear evidence of Melo's post-tax lost income and for it to be instructed that any amount awarded to Melo will not be taxable income.

## II. Discussion [1]

### A. The Reasonable Value of Medical Services

■ In personal injury cases, as in other tort cases, "compensation is provided, as nearly as possible, to restore a person damaged to the position he would have been in had the wrong not been committed." *My Sister's Place v. City of Burlington*, 139 Vt. 602, 433 A.2d 275, 281 (1981). "For [considerably] more than a century, Vermont courts have applied the collateral source doctrine to deny to a defendant a setoff for payment the plaintiff receives from a third, or collateral, source," however. *Hall v. Miller*, 143 Vt. 135, 465 A.2d 222, 225 (1983); *accord Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 32, 183 Vt. 452, 956 A.2d 528, 542; *see Harding v. Town of Townshend*, 43 Vt. 536, 538 (1871) ("The policy of insurance is . . . in the nature of a wager between the plaintiff and a third person, the insurer, to which the defendant was in no measure privy . . .; [there is no] legal principle which seems to require that it be ultimately appropriated to the defendant's use and benefit.").

The purpose for the collateral source rule is "to prevent the wrongdoer from escaping liability for his or her misconduct," regardless of whether a plaintiff may ultimately also be compensated for injuries by a source independent of the tortfeasor. *Windsor Sch. Dist.*, 2008 VT 27, ¶¶ 32, 34, 956 A.2d at 542; *My Sister's Place*, 433 A.2d at 281. The rule, and the cases interpreting the rule, "reflect the philosophy that a tortfeasor should not reap the benefits of a victim's providence" in obtaining insurance. *Id.; see Windsor*

---

1. Jurisdiction in this case, which was removed from the Superior Court of Chittenden County, Vermont, is based upon diversity of citizenship. *See* 28 U.S.C. § 1332(a); 1441(a). As the parties do not dispute that the law of the forum state applies in this personal injury lawsuit, the Court applies the substantive law of the state of Vermont. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*Sch. Dist.*, 2008 VT 27, ¶ 32, 183 Vt. 452, 956 A.2d 528; *see generally* Kevin S. Marshall & Patrick W. Fitzgerald, *The Collateral Source Rule and its Abolition: an Economic Perspective*, 15 Kan. J.L. & Pub. Pol'y 57, 58–60 (2005) (quoting *Harding v. Town of Townshend* in a discussion of the collateral source rule and its origin).

■■■ Evidence that a plaintiff has received compensation for his injuries from insurance or any other third party collateral source is therefore inadmissible in mitigation of damages. *Houghton v. Leinwohl*, 135 Vt. 380, 376 A.2d 733, 737 (1977). Allstate argues nevertheless that evidence of payment from Melo's healthcare insurance is admissible for another purpose, that is, as evidence of the reasonable value of medical services.

■■ "The damage measure for medical expenses is . . . the reasonable value of the services rendered to the plaintiff." *Smedberg v. Detlef's Custodial Serv., Inc.*, 2007 VT 99, ¶ 37, 182 Vt. 349, 940 A.2d 674, 685 (quotation marks and citation omitted).

The Vermont Supreme Court has not decided whether the collateral source rule applies to bar evidence of third party payment that is directed to proof of the value of medical services rendered rather than to proof of the amount of damages owed by a defendant. Vermont's trial courts have reached different conclusions, although the majority have ruled that evidence of collateral source payments is not admissible to prove the reasonable value of medical services rendered. *See, e.g., Beaudin v. Kupersmith*, No. S0803–07 CnC, slip op. at 3 (Vt.Super.Ct. Oct. 26, 2010) (Skoglund, J., Supreme Court Justice sitting in Superior Court) (holding that to permit evidence of amounts paid by a third-party source would circumvent the purpose of the collateral source rule); *O'Bryan v. Hannaford Bros., Inc.*, No. 10–1–07 Ancv, slip op. at 3–4, 2008 WL

6825535 (Vt.Super.Ct. Dec. 30, 2008) (Corsones, J.) (holding that the collateral source rule bars the admission of evidence of third-party payments, even if offered to determine the reasonable value of medical treatment rendered); *Rosa v. Dartmouth–Hitchcock Med. Ctr.*, No. 93–2–06 Wmcv, slip op. at 3 (Vt.Super.Ct. Nov. 26, 2008) (Suntag, J.) (granting motion to exclude evidence of Medicare/Medicaid payments made on plaintiff's behalf); *Madrid v. Paquette*, No. 194–7–07 Ancv, slip op. at 3–4 (Vt.Super.Ct. July 28, 2008) (Toor, J.) (holding that evidence of collateral source payments is inadmissible to prove reasonable value of medical services); *Buker v. King*, No. 523–11–05 WRCV, slip op. at 3, 2008 WL 7414616 (Vt.Super.Ct. June 23, 2008) (Morris, J.) (granting motion in limine excluding evidence of amounts paid by Medicaid for medical services rendered as violating collateral source rule); *Gaston v. Nickerson*, No. S1349–01 CnC, slip op. at 3 (Vt.Super.Ct. Dec. 2, 2003) (Bryan, J.) (holding that the collateral source rule applied to require submission to the jury of amounts billed rather than amounts actually paid). *But see McGowan v. Chase*, No. S0739–06 Cnc, slip op. at 2–3, 2009 WL 2969645 (Vt.Super.Ct. May 11, 2009) (Pearson, J.) (observing in dictum that the more appropriate measure of damages is the amount received by the medical provider); *Bora v. Chittenden Cnty. Transp. Auth.*, No. S0243–04 CnC, slip op. at 4, 2006 WL 4660871 (Vt.Super.Ct. Apr. 14, 2006) (Joseph, J.) (limiting damages evidence to amounts actually paid to healthcare providers).

■■ In addressing an unsettled area of state law, a federal court sitting in diversity must " 'carefully predict how the state's highest court would resolve the uncertaint[y].' " *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir.2005) (quoting *Santalucia v. Sebright Transp., Inc.*, 232

F.3d 293, 297 (2d Cir.2000)). " 'In making this prediction, [the Court] give[s] the fullest weight to pronouncements of the state's highest court, here the Vermont Supreme Court, while giving proper regard to relevant rulings of the state's lower courts. [The Court] may also consider decisions in other jurisdictions on the same or analogous issues.' " *Id.* (quoting *Maska U.S., Inc. v. Kansa Gen. Ins. Co.,* 198 F.3d 74, 78 (2d Cir.1999)).

The Vermont Supreme Court has steadfastly adhered to the collateral source rule, noting that it is most commonly applied where, as here, insurance companies have compensated plaintiffs for their injuries. *See Windsor Sch. Dist.,* 2008 VT 27, ¶ 32, 956 A.2d at 542. The collateral source rule applies to actions sounding in contract and breach of warranty, *see Hall,* 465 A.2d at 226, and actions where liability is determined without a finding of fault. *See Windsor Sch. Dist.,* 2008 VT 27, ¶¶ 33, 41, 956 A.2d at 542, 544. In *Windsor School District,* the Court cited to a decision of the Supreme Court of Wisconsin in its discussion of the policy goals of the collateral source rule. *See id.* ¶ 35, 956 A.2d at 543 (citing *Leitinger v. DBart, Inc.,* 2007 WI 84, ¶ 33, 302 Wis.2d 110, 736 N.W.2d 1, 10).

The issue in *Leitinger* was identical to the issue presented here. *Leitinger* was a suit for damages from an injury suffered by an employee at a construction site. The parties disputed the reasonable value of the plaintiff's medical treatment, where the healthcare provider billed the plaintiff $154,818.51 for the treatment, but accepted $111,394.73 from the plaintiff's health insurance company. At issue was whether the collateral source rule barred the introduction of evidence of the amount paid by the health insurance company when offered for the purpose of establishing the reasonable value of the medical treatment

rendered. *Leitinger,* 2007 WI 84, ¶¶ 3–4, 736 N.W.2d at 3.

The *Leitinger* court held "that the collateral source rule prohibits parties in a personal injury action from introducing evidence of the amount actually paid by the injured person's health insurance company, a collateral source, for medical treatment rendered to prove the reasonable value of the medical treatment." *Id.* ¶ 7, 736 N.W.2d at 4. In reaching its decision, the *Leitinger* court first examined the appropriate measure of damages for medical treatment. In Wisconsin, as in Vermont, the appropriate measure of damages is "the reasonable value of the medical treatment reasonably required by the injury." *Id.* ¶ 23, 736 N.W.2d at 6; *Smedberg,* 2007 VT 99, ¶ 37, 940 A.2d at 685. Also in Wisconsin, as in Vermont, the fact-finder determines the reasonable value of the medical services rendered. *Leitinger,* 2007 WI 84, ¶ 24, 736 N.W.2d at 7; *see e.g., Smedberg,* 2007 VT 99, ¶ 3, 940 A.2d at 676; *Kinney v. Cloutier,* 125 Vt. 109, 211 A.2d 246, 249 (1965).

Next, the *Leitinger* court examined the collateral source rule, which, as a rule of damages, "denies a tortfeasor credit for payments or benefits conferred upon the plaintiff by any person other than the tortfeasor." *Leitinger,* 2007 WI 84, ¶ 28, 736 N.W.2d at 8 (quotation marks and citation omitted). Vermont's rule operates the same: "the collateral source doctrine ... den[ies] to a defendant a setoff for payment the plaintiff receives from a third, or collateral, source." *Hall,* 465 A.2d at 225. The *Leitinger* court noted that the collateral source rule is also a rule of evidence, "preclud[ing] introduction of evidence regarding benefits a plaintiff obtained from sources collateral to the tortfeasor." *Leitinger,* 2007 WI 84, ¶ 30, 736 N.W.2d at 9. The same is true in Vermont. *See Houghton,* 376 A.2d at 737. Vermont and Wis-

consin courts both acknowledge that although an injured person may receive one recovery from the collateral source and another recovery from the tortfeasor, this result is acceptable because "the purpose of the collateral source rule is not to provide the injured person with a windfall, but rather to prevent the tortfeasor from escaping liability because a collateral source has compensated the injured person." *Leitinger*, 2007 WI 84, ¶ 34, 736 N.W.2d at 10; *accord Windsor Sch. Dist.*, 2008 VT 27, ¶ 35, 956 A.2d at 543.

The *Leitinger* court concluded that the defendants were attempting to circumvent the collateral source rule, that once evidence of a negotiated payment was introduced into evidence, a plaintiff would be caught between explaining the compromise and revealing the existence of a collateral source, or leaving the source of the payment unexplained and risking juror confusion. *Leitinger*, 2007 WI 84, ¶ 53, 736 N.W.2d at 14. Accordingly, it held that "[t]he collateral source rule prevents the fact-finder from learning about collateral source payments, even when offered supposedly to assist the jury in determining the reasonable value of the medical treatment rendered, so that the existence of collateral source payments will not influence the fact-finder." *Id.* ¶ 54, 736 N.W.2d at 14.

Vermont trial courts have reached similar conclusions. For example, in *Beaudin,* Justice Skoglund observed that "[a]dmitting evidence of the amount of payment accepted, in contrast to the amount billed, would permit Defendant to circumvent the purpose of the collateral-source rule. Evidence of amounts actually paid by a third-party source would suggest that Plaintiff was not fully liable for the total cost of her recovery and could impact the jury's view of her injury." *Beaudin,* slip op. at 3. In *Madrid,* Judge Toor specifically agreed with *Leitinger's* reasoning and concluded that evidence of collateral source payments was not admissible to prove the reasonable value of medical services. *Madrid,* slip op. at 3–4.

There is no reason to suppose that the Vermont Supreme Court was unaware of the broader legal issue in *Leitinger,* when it quoted the Wisconsin Supreme Court's decision in its discussion of the policy goals of the collateral source rule. This Court predicts that, if faced with the issue, the Vermont Supreme Court would align itself with *Leitinger* and the other state high courts, as well as the majority of Vermont trial courts, that have applied the collateral source rule to bar the introduction of evidence of the amount paid by a health insurance company to prove the reasonable value of medical services rendered. *See id.; see also, e.g., Bynum v. Magno,* 106 Hawai'i 81, 101 P.3d 1149, 1160 (2004) (holding in medical malpractice case that a plaintiff is entitled to recover the reasonable value of medical services, and not the amounts actually paid by Medicaid/Medicare); *Wills v. Foster,* 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018, 1033 (2008) (holding that the collateral source rule bars evidence that a plaintiff's losses have been compensated by insurance, even to establish reasonable value of medical services); *Law v. Griffith,* 457 Mass. 349, 930 N.E.2d 126, 134 (2010) (holding that evidence of amounts actually paid to the healthcare provider were inadmissible as contravening the collateral source rule); *White v. Jubitz Corp.,* 347 Or. 212, 219 P.3d 566, 582 (2009) (holding that the state's collateral source statute "reflects a legislative decision to permit plaintiffs to recover damages from tortfeasors even if, due to insurance and or benefits, . . . they do not suffer out-of-pocket loss"); *Papke v. Harbert,* 738 N.W.2d 510, 536 (S.D.2007) (holding in medical malpractice suit that the collateral source rule applies to pre-

clude evidence of amounts "written off" by medical care providers as proof of the reasonable value of medical services); *Acuar v. Letourneau*, 260 Va. 180, 531 S.E.2d 316, 323 (2000) (holding that plaintiff could present evidence of the full amount of medical expenses without any reduction for the amounts written off by healthcare providers).

Melo asserts further that the Court should define the reasonable value of his medical care as the amount his healthcare providers charged for his care. Pl.'s Mot. in Limine 5. It is the province of the jury to determine the reasonable value of Melo's care. The amount Melo's healthcare providers billed is evidence of that value, but it may not be the sole evidence. This Court has concluded that the collateral source rule bars Allstate from introducing evidence of the amount actually accepted by Melo's healthcare providers; Allstate may, however, introduce any relevant evidence of the reasonable value of medical services that is not barred by the collateral source rule.[2] This may include,

for example, evidence as to what the provider usually charges for the services provided, or what other providers usually charge. *See, e.g., Law*, 930 N.E.2d at 131 (holding "that evidence of amounts actually paid to the plaintiff's medical providers is not admissible, but evidence may be introduced concerning the range of payments that the providers accept for the types of medical services that the plaintiff received.").

### B. Lost Income

■ Melo claims a loss of income of $174,231.00 from his dental practice because he was unable to work for three months while he was recovering from his injuries. He seeks an order barring the jury from learning his after-tax lost income; Allstate argues that the jury should hear evidence of Melo's post-tax lost income, and should be instructed that any amount awarded to Melo will not be taxable income.

---

**2.** Determination of the reasonable value of medical services is hampered, to be sure, by the fact that currently in the United States there is no true market value for medical services. Third party payers negotiate substantial discounts from the rate that providers charge, and those rates are closely guarded as trade secrets. *See* Mark A. Hall & Carl E. Schneider, *Patients as Consumers: Courts, Contracts, and the new Medical Marketplace*, 106 Mich. L. Rev. 643, 648, 657 (2008). The discounted rates may vary substantially from insurer to insurer, from state to state, and from provider to provider, *see id.* at 664, and in the case of Medicare and Medicaid are fixed by law. *See, e.g.,* Uwe E. Reinhardt, *The Pricing of U.S. Hospital Services: Chaos Behind a Veil of Secrecy*, 25 Health Affairs 57, 59–61 (2006). Uninsured persons may be responsible for the full amount of the bill charged. *See* Glen Melnick & Katya Fonkych, *Hospital Pricing and the Uninsured: Do the Uninsured Pay Higher Prices?*, 27 Health Affairs 116, 116 (2008). Hospitals must provide emergency health care for those in need of it,

regardless of whether those individuals can afford to pay for their care. As a result the cost of "free" care may be incorporated into billing rates. *See, e.g.,* Gerard F. Anderson, *From 'Soak the Rich' to 'Soak the Poor': Recent Trends in Hospital Pricing*, 26 Health Affairs 780, 784 (2007). The medical services provider may receive payment at an uninsured rate, a Medicare rate, a Medicaid rate, one of several negotiated insurance rates, or no payment at all. *See* James McGrath, *Overcharging the Uninsured in Hospitals: Shifting a Greater Share of Uncompensated Medical Care Costs to the Federal Government*, 26 Quinnipiac L. Rev. 173, 183–85 (2007) (discussing pricing disparities in hospital charges). Which of these numbers, or combinations of numbers, represents the "reasonable value" of the medical services provided? The discounted rate that an insurance company may have negotiated may bear as little relationship to the reasonable value of the medical services as the amount originally billed. *See, e.g.,* Stanley v. Walker, 906 N.E.2d 852, 857 (Ind.2009).

Melo contends that the Vermont Supreme Court's decision in *Coty v. Ramsey Associates, Inc.*, 149 Vt. 451, 546 A.2d 196 (1988), supplies authority for his position. *Coty* involved a challenge to the failure to reduce a damage award to the depreciated cost of equipment the plaintiffs purchased to alleviate a nuisance caused by the defendants. The Court held that the trial court was correct to calculate compensatory damages based on the full cost of the equipment. *Id.* at 204. It noted that "any tax benefit received by the [plaintiffs] ... was derived from a collateral source, i.e., the United States government.," and reiterated that "[t]he 'collateral source rule' allows a plaintiff full recovery against a tortfeasor even where he is otherwise compensated by a source independent of the tortfeasor." *Id.* According to the Court, tax benefits are "extraneous" to an award of damages against a tortfeasor: "[a]ny tax benefit received by plaintiffs is a matter solely between them and the taxing authority. If we considered the significance of such tax benefits, then we would also have to consider the diminution of damages awards by taxation." *Id.* (citations omitted).

Allstate would confine *Coty* to its facts, and relies on a 1980 United States Supreme Court decision to support its position that after-tax lost income is the appropriate figure to present to the jury. In *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), a wrongful death action under the Federal Employers' Liability Act, the Supreme Court considered whether evidence showing the effect of income taxes on the decedent's estimated future earnings was admissible, and whether the jury should have been instructed that its award would not be subject to any income taxes. Under federal law, the Court held, estimated after-tax income was "the only realistic measure of [the decedent's] ability to support his family." *Id.* at 493, 100 S.Ct. 755. It "reject[ed] the notion that the introduction of evidence describing a decedent's estimated after-tax earnings is too speculative or complex for a jury." *Id.* at 494, 100 S.Ct. 755. In this case, the Court held that it was error to refuse the requested instruction. *Id.* at 498, 100 S.Ct. 755.

*Liepelt* involved the calculation of future lost income, and governs actions based on federal law. At issue here is whether the collateral source rule bars the introduction of evidence that would diminish a compensatory damage award of past lost income by the amount that the plaintiff would have paid in state and federal income tax, an issue that did not arise in *Liepelt.*

Personal injury awards are not taxable income. *Id.* at 496, 100 S.Ct. 755 (citing 26 U.S.C. § 104(a)(2)); *Stowell v. Simpson,* 143 Vt. 625, 470 A.2d 1176, 1177 (1983). By exempting personal injury awards from gross income, Congress conferred a tax benefit on injured parties. *See, e.g., Klawonn v. Mitchell,* 105 Ill.2d 450, 86 Ill.Dec. 478, 475 N.E.2d 857, 859 (1985). The *Coty* court ruled that "[a]ny tax benefit received by plaintiffs is a matter solely between them and the taxing authority." 546 A.2d at 204.

*Coty* signaled that the Vermont Supreme Court would not approve the diminution of a compensatory damage award by evidence of post-tax lost income. *See id.* Regardless of whether the issue is overly complex and speculative, or easily comprehended and proven, in the view of the Vermont Supreme Court it is a side issue in a tort case. *See id.; see also* Restatement (Second) of Torts § 920A(2) (1979) ("Payments made to or **benefits conferred on** the injured party from other sources are not credited against the tortfeasor's liability ....") (emphasis supplied). According to Vermont's application

of the collateral source rule, evidence of Melo's post-tax lost income is inadmissible.

■ Allstate also seeks a ruling that the jury will be instructed that Melo's damage award will not be taxable income. In *Stowell*, the Vermont Supreme Court approved a jury instruction that personal injury awards are not subject to income tax. 470 A.2d at 1179. Such an instruction is not required, however, when taxation issues have not been discussed during the trial. *Derosia v. Verboom,* 169 Vt. 593, 736 A.2d 775, 777 (1999) (entry order). Taxation issues are unlikely to arise at trial here, given the Court's ruling that the collateral source rule bars evidence of Melo's post-tax lost income. The Court therefore **denies** the requested instruction. Should taxation issues somehow arise at trial that could arguably require clarification for the jury, Allstate may renew its request.

Accordingly, Melo's Motion in Limine Re: Medical Specials & Lost Wages is **granted in part and denied in part.** The collateral source rule bars the admission of evidence of the amount paid by Melo's healthcare insurance company, and of Melo's post-tax lost income. Allstate may present any relevant evidence that is not barred by the collateral source rule of the reasonable value of medical services provided to Melo. A jury instruction on the taxation consequences of Melo's damage award is not warranted at this time.