VERMONT SUPERIOR COURT       CIVIL DIVISION
Windsor Unit            Case No. 539-11-16 Wrcv
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org



Robert Greenfield and Robin Imbrogno Greenfield
   Plaintiffs

v.

Kimberlee Luce, Matthew Wood, Michael Wood,
Nancy Scott, Robert Scott, Bondville Real Estate, Inc.,
Paul Emmanuel, Dakin & Benelli, P.C., William Dakin, Esq.,
DBS Surveys, Inc., Donald Stein, and Irina Ohl
   Defendants

### Decision on Defendant's Motion to Compel

Plaintiffs Robert Greenfield and Robin Greenfield bought a 70-acre parcel of property in Chester. At the time of purchase, they believed that the parcel could be accessed from a certain public road via a deeded easement across two other properties. Attorney William Dakin provided a title opinion to this effect. Subsequent litigation has determined that plaintiffs have no legal right to use the easement. See *Greenfield v. Luce*, No. 22-AP-158, 2022 WL 16848175 (Vt. Nov. 2022) (unpub. mem.). Plaintiffs are now pursuing a number of claims that follow from this determination, including a legal-malpractice claim against Attorney Dakin.

At issue is whether Attorney Dakin and his law firm are entitled to discovery from plaintiffs regarding the details of a settlement between plaintiffs and their title insurer. Plaintiffs contend that the requested materials are not discoverable under the collateral-source rule. Attorney Dakin argues that there are multiple reasons why disclosure of the information should be compelled.

Attorney Dakin argues first that the collateral-source rule does not relate to the discovery of evidence. However, prior Vermont cases have established that the collateral-source rule has substantive, evidentiary, and discovery-related components. As a substantive rule, the collateral-source doctrine provides that a defendant is not entitled to a setoff for payments that the plaintiff has received from "a third, or collateral, source." *Hall v. Miller*, 143 Vt. 135, 141 (1983); accord *Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 32, 183 Vt. 452; Restatement (Second) of Torts § 920A; Dobbs, The Law of Torts § 482 (2d ed.). As an evidentiary rule, the collateral-source doctrine provides that evidence of such payments is not admissible at trial, because it is "not of the slightest consequence who reimbursed plaintiff, or under what circumstances, if defendant was not connected therewith." *Northeastern Nash Auto. Co. v. Bartlett*, 100 Vt. 246, 258 (1927); *Melo v. Allstate Ins. Co.*, 800 F.Supp.2d 596, 599 (D. Vt. 2011) (Sessions, J.); *Madrid v. Paquette*, No. 194-7-07 Ancv, 2008 WL 6825536 (Vt. Super. Ct. July 28, 2008) (Toor, J.); *Leitinger v. Dbart, Inc.*, 2007 WI 84, ¶ 30, 736 N.W.2d 1. And as a discovery

rule, the collateral-source doctrine provides that evidence of such payments is not discoverable, because discovery of the information "will not lead to further discoverable materials." *Hoadley v. Bridwell*, No. 184-8-06 Lecv, 2008 WL 7118363 (Vt. Super. Ct. June 19, 2008) (Grearson, J.); accord *Prouty v. Southwest Vermont Medical Center*, No. 89-2-13 Bncv, 2015 WL 3935346 (Vt. Super. Ct. June 15, 2015) (Wesley, J.); *Sherman v. Ducharme*, No. 334-5-08 Wrcv, 2009 WL 6565300 (Vt. Super. Ct. Nov. 10, 2009) (Eaton, J.). The court is aware that the collateral-source doctrine is not understood in every jurisdiction as including discovery-related applications, e.g., *Shaw v. Shandong Yongsheng Rubber Co. Ltd*., 2020 WL 1974762 (D. Colo. Apr. 24, 2020), but the court considers the Vermont rule to be as stated herein.

Attorney Dakin argues second that title insurance is different, and not subject to the collateral-source doctrine. He cites several cases to this effect, but those cases dealt with lender policies (purchased at the mortgagee's insistence and for the mortgagee's protection), e.g., *Flagstar Bank, FSB v. First Citizens Bank and Trust Co., Inc*., 2010 WL 2867289 (D.S.C. July 20, 2010); *In re Moser*, 2011 WL 2708658 (Bankr. N.D. Cal. July 9, 2011), rather than with the type of owner policy at issue in this case. In Vermont, the difference is that lender policies and attorney opinions are typically part of the real-estate transaction, but the owner policy is only issued if the prospective owner chooses to purchase it as an additional method of title assurance. 1 Palomar, Title Insurance Law §§ 1:2 & 1:18; 11A Couch on Insurance § 159:5. Given this, the court discerns no reasons why a prospective owner's decision to purchase title insurance should be distinguished from a person's decision to buy other forms of insurance. See, e.g., *Windsor School Dist*., 2008 VT 27, ¶ 40 (explaining that the collateral source rule applies where "the decision to purchase the insurance was entirely that of [the plaintiff]").

Attorney Dakin argues third that the collateral-source rule does not apply because the insurance policy was written based upon his attorney opinion. His argument is that he was therefore "connected" to the payment within the meaning of cases such as *Northeastern Nash Auto. Co. v. Bartlett*, 100 Vt. 246, 258 (1927). However, the references in those cases are not about whether any underwriting connection exists, but rather whether the payment was made by the defendant or "by a person acting for him." Restatement (Second) of Torts § 920A & cmt. c. Here, the title-insurance company made payments pursuant to the owner policy, rather than pursuant to Attorney Dakin's malpractice policy, or otherwise on his behalf. For this reason, Attorney Dakin's role in underwriting the policy does not provide a basis for concluding that the title insurer was "acting for him" when making the payments.

Attorney Dakin argues fourth that discovery of the settlement amount is needed because it could be used to impeach plaintiffs if they testify at trial that the property has no value without the deeded easement. Some cases from other states have allowed evidence of collateral-source payments to be used for impeachment of "false or misleading testimony," e.g., *Robinson Property Group, L.P. v. Mitchell*, 7 So.3d 240, 245–46 (Miss. 2009). However, there is only a speculative probability that plaintiffs will testify in this case that the property has "no value," as the suggestion is based upon something that plaintiffs' attorney said in an email, rather than upon any evidentiary materials. As such, the argument could be made in any case, and the court is not persuaded that management of the issue at this juncture requires a departure from the established discovery-related applications of the collateral-source doctrine.

Attorney Dakin argues fifth that discovery of the settlement terms is needed because plaintiffs will be seeking attorney fees as damages, and "it would be unreasonable to allow plaintiffs to recover attorney fees generated in connection with time spent discussing the case with the third-party payor."

Assuming, however, that attorney fees are approved as an element of damages in this case, it will be plaintiffs' burden in the first instance to establish the reasonableness of the fees, and to submit detailed billing records to support the claims, e.g., *Schreck v. Black River Brewing Co.*, Nos. 643-10-07 Wrcv & 580-8-08 Wrcv, 2010 WL 5579488 (Vt. Super. Ct. Aug. 10, 2010) (Eaton, J.). An assessment of the reasonableness of plaintiffs' requests can be undertaken through review of the billing records, and does not require an exploration of the terms of the settlement agreement.

Attorney Dakin argues sixth that discovery of the settlement terms is needed because the information will be valuable in evaluating his settlement options. However, this is not a valid basis for discovery. The rule is that discovery is limited to "admissible material or those things reasonably calculated to lead to the discovery of admissible material," rather than extending to "all things which may aid in settlement." *Sherman*, No. 334-5-08 Wrcv, 2009 WL 6565300.

Attorney Dakin argues finally that application of the collateral-source rule will result in a double recovery for plaintiffs. Generally, this risk is overstated, because a typical function of the collateral-source rule is to "preserve the subrogation rights" of the insurer. Dobbs, The Law of Torts § 482 (2d ed.); *Gabree v. Beauregard*, 2005 WL 6369943 (Vt. Super. Ct. Dec. 9, 2005) (Crawford, J.); see also 1 Palomar, Title Insurance Law § 8:10 (explaining that ALTA forms typically include an express right of subrogation). In any event, Vermont's policy choices generally tolerate the risk of double recovery, because "it is better that the injured plaintiff recover twice than that the breaching defendant escape liability altogether." *Hall*, 143 Vt. at 143. Here, as noted above, Vermont has maintained the attorney opinion and the owner policy as separate methods of title assurance. Given that express choice, the court does not perceive the risk of double recovery as representing a reason for departure from the established substantive, evidentiary, and discovery-related aspects of the collateral-source rule. For these reasons, Attorney Dakin's motion to compel is denied.

Electronically signed on Monday, January 29, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 01/29/24
Windsor Unit