STATE OF VERMONT
ADDISON COUNTY, SS.

MAURICE PAQUETTE and )
MILDRED PAQUETTE )
) Addison Superior Court
v. ) Docket No. S24-1-00 Ancv
)
NEUSE, SMITH & VENMAN, P.C. )

## MEMORANDUM OF DECISION

This matter is before the court on the Defendant's Motion for Summary Judgment filed February 16, 2001, and the Plaintiffs' Motion for Partial Summary Judgment filed April 2, 2001. Oral arguments were heard on June 18, 2001. The Plaintiffs are represented by Kevin E. Brown, Esq. The Defendant is represented by Thomas F. Heilmann, Esq.

### Background

The salient facts are not in dispute. Mr. and Mrs. Paquette had operated a dairy farm on their farm property for many years prior to 1991. Karl Neuse, an attorney in the Defendant law firm, was their attorney, and they consulted with him many times over the years with respect to financial circumstances related to the farm. In 1991 they sought to reduce debts by subdividing a portion of the farm to create residential lots to sell, leaving sufficient land open and usable for themselves, and possibly their son, to continue farming. They entered into an agreement with Clark Hinsdale and his business entity, Sweetmeadow Properties, whereby he would help them do the necessary work to obtain planning commission approval and sell the lots in exchange for a commission on the sale of the lots. They consulted with Mr. Neuse regarding this plan. Mr. Hinsdale prepared a one-page written agreement, which the Paquettes took to Mr. Neuse. An attorney at the firm redrafted the agreement considerably before it was signed by all parties in the form prepared by the attorney. A sketch of the proposed development was attached to and referenced in the terms of the agreement. It showed a rough configuration of the 200 acre farm with a designation of the 120 acre Paquette Farm Parcel to be retained by the Paquettes, and the remaining 80 acres to be subdivided into 8 10-acre long skinny lots. Each of the 10-acre lots had a 2 acre "building envelope" on the road frontage, and the back 8-acre portion of each lot was shown without subdivision lines as part of an overall area marked "Restricted Farmland To Be Used by Paquette Farm." The contract specifies in paragraph 1 that the Paquettes approve the plan because the building envelopes "preserve useable farmland to a maximum degree." Paragraph 11 contemplates the possibility of a sale of "the development rights on the remaining farmland" to a land trust or other non-profit organization, and specifies that it was Mr. Hinsdale's responsibility to promote and arrange for such a transaction, for which he would receive a fee of



ADDISON SUPERIOR COURT
FILED

JUL - 9 2001

KATHLEEN R. KEELER

1

signed on behalf of the Town later in the month, and recorded on July 28, 1992.

There was no further activity on this project during the next three years. On August 8, 1995, the first lot sale in the Paquette subdivision took place when the Paquettes sold Lot #2 to their son. The Open Space Agreement and Planning Commission Order were referenced in the deed. In late1995 or early 1996, the Paquettes conveyed another lot (#5 or #6) to the Whites. The Open Space Agreement and Planning Commission Order were referenced in the deed. In November 1996, the Paquettes conveyed Lot #9 to the Houstons. The Open Space Agreement and Planning Commission Order were referenced in the deed. In all three deeds, there was no specific reservation to the Paquettes of the exclusive right to use the property for agricultural or any other purposes consistent with the Open Space Agreement. The Paquettes' son and the Whites understood that the back 8 acres were going to be farmed by the Paquettes. The Paquettes themselves believed that they had retained the exclusive right to crop the restricted land. Attorney Neuse understood that the Paquettes intended to retain the exclusive right to crop the restricted land.

Attorney Roper was the attorney in the Defendant law firm who revised the Open Space Agreement on behalf of the Paquettes in 1992 and prepared the warranty deed of Lot #2 to their son in 1995 on behalf of the Paquettes. At the time of preparing these documents, the law firm had in its file a copy of the original contract between the Paquettes and Clark Hinsdale and Sweetmeadow Properties, to which the original sketch plan was attached as an exhibit. When he prepared the deed to the Paquettes' son in 1995, Attorney Roper did not intend to reserve to the Paquettes the exclusive right to use the back 8 acres of Lot #2. He did not know or understand that it was the Paquettes' intention to reserve for themselves exclusively the right to farm the restricted area.

In March of 1997, four months after the Houstons purchased Lot #9, they conveyed it to Jeanne Banach. In June of 1997, Jeanne Banach placed a fence around the entire 10 acres of Lot #9 and proceeded to crop the back 8 acres for herself. There is no specific provision in the deed to her, or in the prior deed from the Paquettes to the Houstons, that reserves for the Paquettes the exclusive right to crop the back 8 acres on her lot. The effect of the fence is to prevent the Paquettes from haying the back 8 acres of Lot #9. Jeanne Banach, through a person who resides on her property, continues to crop the hay to the present.

After the erection of the Banach fence and the ensuing dispute with Jeanne Banach, the Paquettes met with Attorney Neuse to discuss the situation. He admitted that the deed drafted by his firm restricts use on Lot #9, but does not specifically reserve the back 8 acres of Lot #9 for the Paquettes' exclusive agricultural use. The Defendant law firm subsequently prepared supplemental agreements for Lots #2 and #6 which expressly reserved to the Paquettes the exclusive right to farm the back 8 acres of the subdivided lots.

3

Discussion

In this case, Plaintiffs claim professional negligence on the part of the Defendant law firm for failing to reserve the back 8 acres on Lot #9 for the exclusive agricultural use of the Paquettes. Defendant law firm has moved for summary judgment, claiming that the effect of the provisions of all recorded documents supports an interpretation that the Paquettes do hold an exclusive right to farm the back 8 acres. Plaintiffs have moved for partial summary judgment on the issue of liability, claiming that the undisputed facts support a ruling as a matter of law that Defendant was negligent.

Defendant's argument is that the recorded survey shows the back 8 acres of Lot #9 to be under restriction, that the recorded Open Space Agreement restricts the property, that the Planning Commission conditions require the property to be under the restriction of the Open Space Agreement, and that the recorded deed references these other documents, which establish the property as a restricted area. Defendant relies more particularly on the provisions quoted above from the Open Space Agreement, specifically on the language in the final paragraph quoted above, when the "Grantors" retained the exclusive right to use the property for themselves and their heirs, executors, administrators, successors and assigns. Defendant argues that this language supports an interpretation that the right was reserved for the Paquettes alone, as owners of the retained farm parcel, and does not need to be read to refer to successors and assigns of subdivided lots.

This argument is not consistent with other language of the Open Space Agreement itself, or with normal rules of construction of deed language. In the two other provisions quoted above, the Grantors make covenants on behalf of themselves, their heirs and assigns, and it is clear that the reference is intended to include subsequent grantees as well as themselves personally. Furthermore, that is the standard meaning of such language. "Assigns" include all subsequent grantees, either immediately or remotely from an assignor. "Assignees; those to whom property is, will, or may be assigned." Black's Law Dictionary, Sixth Edition. The Open Space Agreement conveys to the Town an easement for the benefit of the Town, and reserves for the Paquettes, as owners of all the restricted land at that time, the right to use the easement area for all purposes not inconsistent with the easement, but it is silent as to who will hold that right in the future: the Paquettes themselves, as current owners of all or any portion of the restricted area or as owners of the retained "Paquette Farm Parcel", or subsequent grantees of the subdivision lots. While this could have been addressed as a provision in the Open Space Agreement (as was the issue of responsibility for property taxes), it was not, leaving any allocation to be sorted out at the time of subsequent conveyances. Contrary to Defendant's argument, the language of the Open Space Agreement does not support a ruling as a matter of law that the Paquettes retained the exclusive right to agricultural use on the back 8 acres of the subdivided lots, nor do any of the other recorded documents relied on, either singly or collectively. *In Re: Stowe Club Highlands*, 164 Vt. 272, 277 (1995).

As a consequence, references to the Open Space Agreement and the recorded Survey Map

4

in the warranty deed from the Paquettes to the Houstons do not support a ruling as a matter of law that the Paquettes reserved for themselves or their heirs, successors and assigns of either the 120 acre farm parcel or of other restricted land the exclusive right to agriculture use of the back 8 acres on Lot #9. Accordingly, Lot #9 was conveyed to the Houstons subject to an open space easement enforceable by the Town, but not subject to any right of the Paquettes to the exclusive right to use the back 8 acres for purposes consistent with the open space easement. Defendant fails in its claim that the Plaintiffs cannot show that the deed to the Houstons contains no reservation of a right to exclusive agricultural use in favor of the Paquettes.

Plaintiffs claim that the undisputed facts entitle them to a ruling as a matter of law that Defendant law firm was negligent. Normally, a cause of action for legal malpractice requires an expert opinion on the duty owed to the client under the circumstances, and whether that duty was breached by the conduct of the attorney. *Tetreault v. Greenwood*, 165 Vt. 577 (1996). The exception is if the lack of care is so apparent that only common knowledge and experience are needed to comprehend it. *Estate of Fleming v. Nicholson*, 168 Vt. 495 (1998).

The undisputed facts show that Karl Neuse of the Defendant law firm knew and understood that the Paquettes' plan for their property included an exclusive reservation for themselves of the right to use the back 8 acres of all the subdivided lots for farming purposes. He was the attorney who worked with them personally and obtained this information from them. It was reflected in the sketch plan attached to the Hinsdale/Sweetmeadow contract that was a foundation document for the whole plan from the beginning. The sketch plan identified the restricted area as "Restricted Farmland to be used by Paquette Farm." The sketch plan was attached to the contract that continued to affect all subsequent conveyances, as it specified Mr. Hinsdale's responsibilities with respect to selling the lots and the terms of his commission on each sale, and a copy was in the law firm records and available for reference at the time of subsequent transactions.

The undisputed facts also show that the individual attorney assigned to prepare subsequent conveyancing documents, Mr. Roper, did not know that on behalf of the Paquettes, he was supposed to prepare deeds that specifically reserved to the Paquettes the exclusive right to agricultural use on the back 8 acres. It is not clear whether he did not know this because Mr. Neuse did not tell him, or whether Mr. Neuse told him but he did not understand properly or made no attempt to carry out the instructions. There is also a question about whether, separate and apart from whether he was told or not, he should have understood from the sketch plan in the law firm file that it was his obligation to prepare deed reserving exclusive agricultural use to the Paquettes. If the entire case hung on this last question, expert opinion testimony might be needed, since such a question might require knowledge of circumstances unique to the profession.

Under these facts, however, it is undisputed that the Paquettes communicated their specific desire to retain exclusive agriculture use of the restricted land to Mr. Neuse, that he understood that this is what they wanted, that the Paquettes provided him with a sketch plan that

5

made their intentions clear visually and verbally, and that this document was attached to the Hinsdale/Sweetmeadow contract redrafted by the Neuse law firm which formed the basis for subsequent conveyancing work the law firm was asked to do over time.

It is also undisputed that the attorney who actually prepared the deeds did not include provisions reserving exclusive agricultural use to the Paquettes. Furthermore, as the court has concluded above, the conveyance to the Houstons did not reserve for the Paquettes the exclusive right to agricultural use on Lot #9. This is not a question of whether an attorney effort to reserve exclusive agricultural use was done improperly because the deed language was faulty, which might require expert testimony, but whether it was done at all. The undisputed facts show that Mr. Neuse knew it should be done and intended it to be done, but the attorney who actually did the work did not ever intend to do it, and did not do it. On these facts, it does not take expert testimony to establish the attorney's duty to the clients, and whether the conduct of the defendant constituted a breach of that duty, as such a determination does not require understanding unique to the profession. Defendant has introduced no facts (such as the existence of a binding contract for sale to the Houstons that did not include a reservation of exclusive agricultural use on the back 8 acres to the Paquettes) to show that the circumstances with respect to the law firm's duty to the clients require expert understanding. The law firm owed a duty to the Paquettes to prepare conveyancing documents that reserved to the Paquettes exclusive acricultural use of the restricted land, and it did not do is in the deed to the Houstons. As a result, Jeanne Banach holds Lot #9 subject to an open space easement in favor of the Town, but not subject to any right of the Paquettes to farm the back 8 acres, and the Paquettes have lost the ability to farm 8 acres of land.

As the undisputed facts show a duty, breach, and causation, Plaintiffs are entitled to a ruling as a matter of law on the issue of liability.

### ORDER

For on the foregoing reasons,

1. Defendant's Motion for Summary Judgment is *denied*.

2. Plaintiffs' Motion for Partial Summary Judgment on the issue of liability is *granted*.

3. A status conference will be scheduled.

Dated this 5th day of July, 2001.

*Mary Miles Teachout*
Hon. Mary Miles Teachout
Superior Judge, presiding

6